| 173 | 15 |
| --- | --- |
| 25 SC | ⁰371 |
| 173 | 15 |
| 220 | ¹310 |

# Maggie   Smith *v.* People's Mutual Live Stock Insurance Company of Pennsylvania, Appellant.

*Insurance—Live stock insurance—Misrepresentations—Evidence—Question for jury.*

In an action upon a policy of insurance for a horse, where the defendant company defends on the ground of misrepresentations on the part of the assured as to the value of the horse, the case is for the jury, where the misrepresentations are denied and where the evidence shows that the plaintiff could neither read nor write, that every statement in the application was made by the company's own agent, that the agent went to the plaintiff's stable, examined the horse, went to his office, filled up the statement, signed the plaintiff's name to the application, and had her affix her mark to it, and that on the back of the paper he signed a statement that the horse was worth the amount named in the policy.

*Insurance—Live stock insurance—Notice of disability—Waiver.*

Where a live stock insurance policy requires a notice in writing within twenty-four hours of the disability of the animal, the company will have

been presumed to have waived the requirement of a written notice, where the company in response to verbal notice by assured immediately sent its surgeon, who examined the animal, and continued his visits until the case became hopeless, and the animal was ordered to be killed.

In such a case it was not error for the court to call the attention of the jury to the fact that the surgeon sent by the company had not complained when he saw the horse, that he had not been called in time to treat it; while but slight evidence that notice of the disease had been given promptly, it was still evidence, and therefore there was no error in adverting to the fact.

*Insurance—Live stock insurance—Cancellation of policy.*

In an action upon a policy of live stock insurance, it appeared that the company was notified of the disability of the horse assured, and sent its surgeon to examine the animal. The surgeon continued to treat the horse for some time, and finally ordered it to be killed. On the day after the order was given to kill the horse, and five days before the order was carried out, the company notified the assured that the policy was canceled, alleging as grounds for the cancellation misrepresentations made by the assured as to the value of the horse in the application for insurance. The company had knowledge of the price paid for the horse more than a week before the notice of cancellation was sent. The evidence also showed that the assured could not read nor write, that the application was filled in by the company's agent, and that the agent had indorsed upon the policy that the actual cash value of the horse was the amount stated in the policy. *Held*, that a point offered by the insurance company assuming that the sole reason for the cancellation was the misrepresentation should have been negatived, because it withdrew from the jury one of the very questions in dispute, viz, whether the cancellation was prompted by misrepresentation, or by a dishonest attempt on the part of the company to evade an otherwise inevitable liability.

*Insurance—Actions against insurance companies.*

Where a policy of insurance provides that actions against the company shall be begun in the county where the home office of the company is situated, the company cannot after filing an affidavit to the merits and pleading the general issue in an action brought elsewhere, object to the jurisdiction of the court. If the company desired to avail itself of the provisions of the policy it should have filed a plea in abatement before pleading the general issue.

*Pleading—Pleas in abatement—Jurisdiction.*

The pleas to the jurisdiction of the court which can be taken as, and which are considered to be, pleas in abatement, are those which while admitting jurisdiction in some court, deny it to the particular court in which the suit is brought for some reason alleged; for if no court has jurisdiction, the objection goes in bar and not in abatement.

Argued Oct. 30, 1895.    Appeal, No. 153, October Term, 1895,

by defendant, from judgment of C. P. No. 2, Allegheny County, Jan. T., 1894, No. 743, on verdict for plaintiff. Before STER-RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit on a policy of live stock insurance.

The facts appear by the opinion of the Supreme Court.

The court charged in part as follows :

Now, by one condition of the policy the insured was bound to give notice of any disease within twenty-four hours after the disease was known. It is alleged in this case by the plaintiff that she did give that notice as soon as she discovered that there was anything serious the matter with the horse. There is evidence that the veterinary surgeon for the defendant company had attended these horses before, or, at least, one of them; and Dr. Carter says when complaint was made to Mr. Rankin, the secretary here, and Mr. Rankin told him to go out, he went out, on the 13th of November, and saw the horse. I think he stated that at that time there was a shoe on the horse's foot and leather under it. He had the smith sent for, the shoe was taken off, he examined the foot and discovered then it was in bad condition. He went back on the 15th, two days after that; and he was back again there on the 21st; and his assistant was there on the 18th and on the 24th. Now, there is evidence here that that disease may have existed for a week, or perhaps a couple of weeks, before the time Dr. Carter went up; and I think there is some evidence here that some man went to see it when there was no shoe on the foot (not representing the defendant company, though), and he had recommended, I think, a shoe, or testimony of the kind. He saw it afterwards, when it was in bad condition. Under that policy, whenever there was anything serious the matter with the horse, anything to indicate a serious disease or complaint, it would be the duty of the insured to give notice within twenty-four hours after that; and that is a question for you, under the evidence, whether there was such notice given. [Bear in mind, too, the fact that Dr. Carter, who went there on the 13th, and again on the 15th, and again on the 21st, does not testify to anything as complaining that sufficient notice had not been given them.] [6]

The other question is about the right of the insurance com-

pany to cancel the policy. There is a provision that for misrepresentation the insurance company had a right to cancel the policy, and, in a case of that kind, all the payments were forfeited. It is a very arbitrary power on the part of the insurance company, to cancel a policy without giving the insured notice of it. I do not say that it might not have power to do it; but I say it is an arbitrary power, and ought not to be exercised, I think, without giving the insured an opportunity of being heard.

[The main question on that aspect of the case is, gentlemen: Was this policy canceled in good faith because of any false representations, or was it canceled in view of the certain death of the animal, in order to get clear of the policy? It is said that the misrepresentation was that in the application the plaintiff said that she had paid $275 for this horse. Was the company deceived by the misrepresentation, or was it a material matter in the case? The plaintiff cannot write. She signed her mark to this application. The application, according to the testimony, was prepared by Mr. Gordon, and according to the evidence, Mr. Gordon was the agent of the defendant company at that time. According to her testimony he solicited from her, or spoke to her about getting an insurance from this company. Undoubtedly he talked with her about it; and she says that he came with this paper and got her to sign it. She signs a mark, and, presumably, could not read the paper; but the fair presumption is that it was read to her or explained to her, because a party ought not to put his name or a mark to a paper without knowing something about it. And yet it is for the jury to say, under all the evidence, whether she knowingly or intentionally made any false representations, or anything that did deceive, or was calculated to deceive, the defendant company.] [2] I apprehend that a statement upon some immaterial matter would be of no consequence. This, however, would be, perhaps, a material matter. And the jury will take into consideration, also, the inspector's report—the report of Mr. Gordon himself. This paper is not only signed by her, but on the back of it is a statement by Gordon, signing himself there as inspector, and which is headed, "Inspector's Report;" and it is on this paper that the insurance was issued; as much upon the statement of the inspector as upon any statement made by the plaintiff—

perhaps more so. What is it? After naming the animal, and who owned it, and where: "Inspected, month of February, 17th day;" then it has the questions, in type or printed, and he answers:

"Have you examined the above named animal? Yes.

"What is its age? Six years.

"Color? Bay.

"Are there any indications of disease of the eyes or legs? No.

"Has it any discharge from the nostrils? No.

"Has it heaves, ring bone, spavin, curb, contracted limbs? No.

"Has it any unsoundness? No.

"In your opinion, what is its cash value?" He answers, "$275."

After inspecting the animal, inspecting it as the agent of the defendant company, and as their agent, he certifies that the cash value of that horse at that time was $275. Now, there is something a little singular about this case, because he prepares the whole paper. In her application the estimated value is put at $267. That would appear to be her estimate of the value of the horse—$267. Still, he certifies the cash value was $275.

Then there is the question: "What did you pay for the above described animal?" Answer: "$275."

[Now, gentlemen, you will take the report of that inspector in connection with the statement of the plaintiff. It is not so material what she paid for the animal, as what the animal was worth at the time of the insurance. That is the material matter.] [3] Of course what was paid for the animal may be evidence as to its value; but the material matter is: What is the value of the animal at the time of the insurance?

[Now, we have the testimony on the part of Mr. Rankin, that he had learned that she only paid something like $90. When did he learn that? I do not know that he said when he learned it.

Now, an insurance company if it has learned that there has been a misrepresentation in the application, must take action immediately on it; not delay. Because, if it delays and still continues to get assessments, why it waives any misrepresentation.

How long before this did he learn of that misrepresentation. If he had learned it some time before, and still continued to receive installments, he could not, on the 23d of November, when he knew this horse was going to die, then make that a pretext for canceling the policy.] [4]

And that comes to the question: Was that policy canceled in good faith at that time; or was it a mere pretext resorted to by the defendant company to get out of paying the policy?

Defendant's points are as follows:

1. That under the policy a suit cannot be maintained thereon in Allegheny county but only in Philadelphia county. *Answer:* Refused. [7]

2. If the jury believe that the company was not notified within twenty-four hours of the disability of the animal, which resulted in his death, the plaintiff cannot recover. *Answer:* This is affirmed—with the qualification that the notice must be given within twenty-four hours after discovering there was anything serious the matter with the horse. If the company accepted and acted upon a verbal notice it would be a waiver of a written notice. [5]

3. If the jury find that the plaintiff misrepresented in her application the amount paid for the horse insured the company had the right to cancel the policy, and, having done so for that reason on November 23, 1893, prior to the death of the horse, the plaintiff cannot recover. *Answer:* If plaintiff knowingly made a false statement or representation in her application which was material to the risk, or which was calculated to deceive or mislead the company, the company would have a right immediately on discovering the misrepresentation to cancel the policy and be relieved from liability. [1]

Verdict and judgment for plaintiff for $213. Defendant appealed.

*Errors assigned* were (1–7) above instructions, quoting them.

*James Bredin,* for appellant.—The amount paid by the assured for property to be insured is a material matter, and its falsity in an application cannot be excused: Nassauer v. Ins. Co., 109 Pa. 513.

The knowledge of the falsity of a statement or warranty by

the agent of the company will not relieve the assured from the consequences of a breach: Barteau Ex. v. Ins. Co., 67 N. Y. 595; Daniels v. Ins. Co., 12 Cushing, 418.

The question submitted by the trial judge to the jury whether the cancellation was in good faith, or a mere pretext to avoid the policy in view of the certain death of the animal, was entirely unauthorized by anything in the case.

*William M. Randolph*, for appellee.—The fraud or mistake of a knavish or blundering agent, done within the scope of the powers given him by an insurance company, will not enable the latter to avoid a policy to the injury of the insured, who innocently became a party to the contract: Smith v. Farmers & M. Mut. Fire Ins. Co., 89 Pa. 292; City Dwelling House Ins. Co. v. Gould, 134 Pa. 570; Dwelling House Ins. Co. v. Hoffman, 125 Pa. 626; Kister v. Ins. Co., 128 Pa. 553; Eilenberger v. Protective Mut. Fire Ins. Co., 89 Pa. 464; Mowry v. Rosendale, 74 N. Y. 363; Ins. Co. v. Wilkinson, 13 Wall. 222; Ins. Co. v. Mahone, 21 Wall. 152; Continental Ins. Co. v. Pearce, 39 Kan. 396; Howard Fire Ins. Co. v. Bruner, 23 Pa. 50.

There was no ground for cancellation of the policy: Home Ins. Co. of N. Y. v. Heck, 65 Ill. 114.

Even if there had been cause for the cancellation of the policy, it was the duty of the company to notify plaintiff of its intention to do so, which it did not: McLean v. Republic Fire Ins. Co., 3 Lansing, 427.

OPINION BY MR. JUSTICE DEAN, January 6, 1876:

On February 17, 1891, plaintiff insured in defendant company against death, disease or accident, a bay horse, in sum of $200 for a term of three years. The company being mutual, the members were subject to assessments for losses; the plaintiff, up to 29th November, 1893, was called on for several assessments, amounting in the aggregate to $80.00, all of which she paid. At that date, the horse, because of an incurable disease in the foot, was killed. The plaintiff demanded the amount of her policy, but the company refused payment on three grounds: 1. Misrepresentation of a material fact as to the value of the horse in her application for the policy. 2. A neglect to give

notice to the company of the disease of the foot in writing within the time stipulated by the conditions of the policy. 3. Because the policy, as stipulated by its terms, had been canceled by the company before the death of the horse.

The policy contains these stipulations: "It is understood and agreed by the holder of this policy, that it may be cancelled at any time during the term for which it is issued, if it be found that any misstatements were made in the application for the same, or important information withheld by the applicant.

"That in the event of sickness or disability from any cause whatever of the animal insured, written notice to the company must be given of such sickness or disability within twenty-four hours after said animal becomes incapacitated for labor. A failure to give such notice, if death ensue, will work a forfeiture of this policy."

In the written application, is this interrogatory and answer thereto: "What did you pay for the above described animal? Answer: $275." The evidence was, she had paid $165 for a pair of horses of which the insured horse was one. This constituted the material misrepresentation alleged, and which warranted cancellation of the policy. On November 23, 1893, five days before the death of the horse, written notice of cancellation because of misrepresentation was given plaintiff by the company.

Written notice of the disability of the horse was not given, but within twenty-four hours after the driver discovered the disease was of a serious character he called at the office and gave verbal notice to the company, and they immediately sent their surgeon to examine the foot; he and his assistant made altogether five visits for treatment of the horse between the 13th and 24th of November, the last one five days before the horse was killed by order of the surgeon.

It was alleged by plaintiff, that the misrepresentation in the application as to the price she paid for the horse was neither written nor dictated by her; that she could neither read nor write, and that it was inserted by the agent who solicited the policy for the company. It was further argued that the company, in response to the verbal notice as to the horse's ailment, by sending its own surgeon to treat it, had waived the written notice required by the stipulations of the policy.

The court submitted the evidence to the jury to find: 1. Whether plaintiff intentionally made any false representations as to the value of the horse. 2. Whether defendant by its conduct had waived written notice of the horse's ailment. The jury found for plaintiff the amount of the policy. From the judgment entered on the verdict, defendant now appeals, assigning seven errors, all except the last to the charge of the court on the evidence and answers to points.

The first complaint of the appellant is the answer of the court to his first prayer for instruction, as follows:

"If the jury find that the plaintiff misrepresented in her application the amount paid for the horse insured, the company had the right to cancel the policy, and, having done so for that reason on November 23, 1893, prior to the death of the horse, the plaintiff cannot recover. *Answer:* If plaintiff knowingly made a false statement or representation in her application which was material to the risk, or which was calculated to deceive or mislead the company, the company would have a right immediately on discovering the misrepresentation to cancel the policy and be relieved from liability."

It is argued by appellant, he was entitled to a peremptory affirmation of his point, and without this the jury by the answer were at liberty to judge whether the statement that the purchase price was $275, when it was but $100, was material to the risk. Undoubtedly, as one fact going to determine the value, this representation was material to the risk; but the point is not so framed as to suggest clearly an answer to that proposition, and the answer must be considered in the light of the evidence and the issue raised at the trial.

There had been evidence that, before any notice to the company of disease in the horse, the defendant had been informed by the party from whom it was purchased that he had been paid no such price; the verbal notice of disease, according to the testimony of appellant's surgeon who made an entry in his visiting book of the date, was on the 13th of November; on the 22d of November, the surgeon notified the driver the horse must be killed the next day, and although not killed until five or six days afterwards, yet on the next day, the 23d, the company notified Mrs. Smith of cancellation of policy because of misrepresention; this evidence warranted the inference

that notice of cancellation was not prompted by misrepresentation as to price, which defendant considered material, but by another fact very material, a fatal disease which demanded the destruction of the insured horse. The coincidence of dates of the discoveries that the horse would be a loss, and that a misrepresentation had been made, was very significant; and the further fact, that the company did not immediately cancel the policy on receiving information as to the price paid, but waited for more than a week, is also significant, either of a waiver of its right to cancel, or that it was aware the statement as to price was not that of the insured, but of its own agent; especially does this last seem probable, when this agent accompanies the application with his written opinion, after a thorough inspection of the horse, that his actual cash value was $275.

In the face of this testimony, the point assumes as an established fact, and asks the court to assume, the sole reason for the cancellation was the misrepresentation. The point as it stood should have been negatived, because it withdrew from the jury one of the very questions in dispute, viz, whether the cancellation was prompted by misrepresentation or by a pretended one, by a dishonest attempt to evade an otherwise inevitable liability. But instead of negativing it, the court, having in view the testimony as to plaintiff's ignorance of the statements put in the application by appellant's agent, the written opinion of the agent as to the value, and the evidence tending to show the cancellation was not in good faith based on the alleged misrepresentation, gives proper instruction on a point which might have been framed so as to apply to such evidence. A point, therefore, was not answered which should have been denied, and appellant was not harmed.

The second, third and fourth assignments are all based on the same unwarranted assumption of a fact which was in dispute on the evidence. The appellant puts in evidence the application as a formal written statement of facts by plaintiff as the inducement to the company to issue the policy. The plaintiff denies it contains her representations, and avers they are those of appellant's agent, made by him on a careful personal inspection of the horse, as shown by his written report made part of the application. There was evidence tending to show every statement in the application was made by the com-

pany's own agent; he went to the stable, examined the horse, then went to his office, and filled out what purported to be her statement, and on back of same paper indorsed and signed his statements as inspector; then signed her name to the application, took it to her and she affixed her mark.

On the contradictory evidence, the court submits the question to the jury, to find whether she did in fact make a false representation, and whether the policy was issued alone on the statements made by defendant's agent. If she had admitted a false statement was made by her, and inserted in the application, or that fact had been clearly proven, the appellant's complaint of error could be sustained, but each one of the three is based on the assumption that every statement in the application was undoubtedly plaintiff's, when this was the very fact the jury were to find. The instruction of the court was based on contradictory evidence, or evidence from which might be drawn opposite inferences; if they found the misstatement was that of the company's own agent, then plaintiff could recover, otherwise not; and viewing the charge in this light, there was no error. The case of Eilenberger v. Insurance Co., 89 Pa. 464, is much the same as the one before us. There the application was for a fire insurance policy; the agent and the insured together inspected the building, the agent inserting the answers to the interrogatories in the application; the insured, without reading or having the application read to him, signed it; the agent then indorsed upon it his own report, which accorded with the statements in the application; the policy issued; the property was destroyed by fire; it turned out some of the statements in the application were false, but the insured had no knowledge they were until after the fire. It was held as he had signed a statement he had not made and did not intend to make, the company•was bound by the act of its dishonest or incompetent agent. To the same effect are Insurance Co. v. Brunner, 23 Pa. 50; Insurance Co. v. Mahone, 21 Wallace, 155, and many other cases.

The fifth assignment is to the answer of the court to appellant's second point, as follows:

" If the jury believe that the company was not notified within twenty-four hours of the disability of the animal which resulted in his death, the plaintiff cannot recover. *Answer:* This is

affirmed with the qualification that the notice must be given within the twenty-four hours after discovering there was anything serious the matter with the horse. If the company accepted and acted upon a verbal notice, it would be a waiver of a written notice."

The undisputed evidence shows that, in response to plaintiff's verbal notice, the company immediately sent its surgeon, who examined the horse, and he and his assistant continued their visits until the case became hopeless, and the horse was ordered to be killed. This was clearly a waiver of the right to insist on a written notice. That the company immediately through its surgeons took charge of the animal's treatment, and then ordered it to be killed, is more than mere evidence from which a waiver might be inferred, it is a waiver by such unequivocal acts as admit of no other construction.

The sixth assignment has nothing of merit to sustain it. The court merely called the attention of the jury to the fact that Dr. Carter, the surgeon sent by the company, had not complained when he saw the horse that he had not been called in time to treat it. While but slight evidence that notice of the disease had been given promptly it was still evidence, and therefore there was no error in adverting to the fact.

The seventh assignment is to the refusal of the court to affirm appellant's first point, as follows : " That under the policy, a suit cannot be maintained thereon in Allegheny county, but only in Philadelphia county." The policy contains this provision: " And in case any suit or action at law should be brought against the said company, the same shall be commenced in the city of Philadelphia, Pennsylvania, and prosecuted in the courts of the city and county of Philadelphia, state of Pennsylvania, as there is where the home office and books of the company are kept, and all contracts are made and entered into."

Without determining whether such a provision would be sustained if the question had been raised at a proper time and by proper pleading, it is sufficient answer here to say, that, after filing affidavit to the merits and pleading the general issue, it is too late to deny the jurisdiction of the court which heard the cause and entered judgment. The plea should have been in abatement of the action before the plea in bar; not having been so entered, it will be deemed as waived.

"The pleas to the jurisdiction of the court which can be taken as and which are considered to be pleas in abatement, are those which, while admitting jurisdiction in some court, deny it to the particular court in which the suit is brought for some reason alleged; for if no court has jurisdiction, the objection goes in bar and not in abatement:" Otis v. Wakeman, 1 Hill, 604; Rea v. Hayden, 3 Mass. 24; Stewart v. Ferry Co., 12 Fed. Rep. 296. Here the point alleges the jurisdiction by the contract is in the courts of Philadelphia county, and not in Allegheny county. It is too late to so plead after a plea in bar.

All the assignments of error are overruled, and the judgment is affirmed.