FRED S. THORNE *vs.* CASUALTY COMPANY OF AMERICA.

Kennebec.     Opinion November 27, 1909.-

*Insurance.     Agents.     Statutes.     Warranty..     Estoppel.     Accident Insurance.*
*Contracts.     Construction.     Revised Statutes, chapter 49, section 93.*

Revised Statutes, chapter 49, section 93, providing that agents of insurance companies shall be regarded as in the place of the companies in all respects regarding any insurance effected by them, and that an insurance company is bound by the agent's knowledge of the risk, etc., applies to life as well as fire insurance companies.

A foreign insurance company transacted business through a domestic corporation which had power to issue policies. An applicant for insurance, having no knowledge of the company, applied to an agent who had full knowledge of the risk, and who took the application to the corporation and it issued a policy the same day and delivered it to the agent, who delivered it to the applicant, who paid the premium to the agent, who remitted the same, less his commission. The applicant, who was deformed and suffered from impairment of vision, warranted himself to be in sound condition. The agent knew of the physical defects. *Held*, that under Revised Statutes, chapter 49, section 93, providing that agents of insurance companies shall be regarded as in the place of the companies, and that a company is bound by the knowledge of the agent, the company was chargeable with knowledge of the physical defects of insured, and waived so much of the warranty as related thereto.

A foreign insurance company transacted business through a domestic corporation which had power to issue policies. The corporation issued a policy through a third person as agent. The insured had no knowledge of the

name of the insurer in which he might have a policy, but he left the matter to the third person. There was nothing to show fraud, and the insured accepted the policy issued by the company through the corporation, and paid the premium. The warranty in the application that the insured was in sound condition was false, and so known to the third person. *Held,* that, though the company had no actual notice of the falsity of the warranty, it was liable on the policy, since it was the moving cause authorizing the transaction, of which insured became an innocent victim.

A stipulation in an accident policy that, if the insured is injured while at work in any occupation classed as more hazardous than that stated in the schedule, the liability of the insurer shall be only for such proportion of the indemnity as the premium will purchase at the rate fixed by the company for the hazard, does not contemplate the inhibition of acts performance of which is necessarily implied from the vocation named in the policy, but applies to a regular occupation engaged in by the insured, in a class other than that named in the policy ; and where the insured's occupation is stated as a member of a firm or employed as manager of a beef company, and where his duties are described as "office duties and travelling only," the insurer is liable for injuries received by the insured while in the refrigerator of his employer's plant directing the transfer of carcasses from one truck to another, and illustrating to the workmen how to do the work.

On report.    Judgment for plaintiff.

Assumpsit on a policy of insurance against accidental injury, brought to recover a stipulated sum for a surgical operation and the face of the policy for the loss of the sight of the plaintiff's right eye.    Plea, the general issue with brief statement as follows :

"And for a brief statement of special matter of defense to be used under the general issue above pleaded the said defendant further says that upon the taking and acceptance by plaintiff of the policy of insurance declared on in this action and as a part thereof said plaintiff did specially warrant that he was in sound condition, mentally and physically, having correct habits and no impairment of sight or hearing. Whereas, in fact and as plaintiff well knew, he was not in sound condition mentally and physically but on the contrary was seriously deformed as to his right hand and arm, his right hand being totally incapable of use from birth, and further he was suffering from serious impairment of vision of his right eye which had existed for a period of twenty years prior to the date of said policy and continued until the time of the accident."

In reply to the defendant's brief statement, the plaintiff filed a replication as follows :

"And now the said plaintiff comes and in answer to the brief statement of subject matter of defense in the above entitled action, says : That the defendant company is estopped to set up the defense that the plaintiff was deformed as to his right hand and arm, or that there was any imperfection in his right eye, because the agent of said defendant company had full knowledge of the condition of the plaintiff's arm or hand, and of the condition and appearance of his right eye, and this he prays may be inquired of by the country."

At the conclusion of the evidence the case was reported to the Law Court for determination upon the legally admissible evidence, and if judgment should be for the plaintiff said court to assess the damages.

The case is stated in the opinion.

*George W. Heselton*, for plaintiff.

*Harvey D. Eaton*, for defendant.

SITTING : WHITEHOUSE, SAVAGE, SPEAR, CORNISH, KING, BIRD, JJ.

SPEAR, J.   This suit is on a policy of insurance against accidental injury.   After the issuance of the policy the plaintiff met with an accident resulting in the loss of his right eye.   This suit is brought to recover a stipulated sum for a surgical operation and the face of the policy for loss of the eye.   The defense is stated as follows : "Defendant resists payment on the ground that plaintiff warranted himself to be in sound condition mentally and physically and without impairment of sight; whereas, in truth and in fact, plaintiff had been deformed from birth as to his right hand and arm, and for more than twenty years prior to the time of the accident had been suffering from impairment of vision of the right eye, which facts were entirely unknown to the defendant company."

The reply of the plaintiff is "That the company is estopped as regards this special matter of defense, because of agent's knowledge." The case comes before the Law Court on report.  The statement of

facts fairly deducible from the report is as follows:   On the 29th day of October, 1907, the defendant company issued to the plaintiff an accident policy under the following circumstances.   Mr. Thurston S. Burns of Westbrook, Maine, who had been an agent for the New York Life Insurance Company for twenty years and was also agent of the Employers Liability Accident Company, called upon the plaintiff at his place of business in Gardiner, Maine, to solicit insurance.   Having closed their conversation with respect to life insurance Mr. Burns inquired, "Wouldn't you like some accident insurance?"   The plaintiff replied, "No, I have plenty.   I have some with you and some with Mr. Dunlap."   To the answer that he had none with Mr. Burns Mr. Thorn's clerk was directed to look up his accident policies and it was found that all the policies had expired.   Then the plaintiff informed Mr. Burns that he would take $10,000 accident with him ; one a $5000 combination health and accident, and the other $5000 straight accident.   This concluded the interview and comprises all that was said and done by the plaintiff and Mr. Burns prior to the issue and delivery of the policy. Mr. Burns took from the expired accident policies such data as he desired for the accident insurance application without any suggestion or statement in regard to the warranties by the plaintiff; or in regard to what company was to issue the policies.

Upon the method of procuring the memoranda and obtaining the policy issued we quote Mr. Burns' undisputed testimony.

"Q.   Did you make up such memoranda as you wanted for the purpose of presenting an application for him?

A.   I made copies from that policy previously written.   I merely copied the answers that were in that policy, and this I took to Macomber, Farr & Whitten at Augusta and asked Mr. Carll—gave him the facts, and he and I together made out the application. The policy was issued and delivered to me, and the same afternoon I delivered it to Mr. Thorne, collected the premium and then, or a day or two later, I gave Macomber, Farr & Whitten the premium, less my commission.   That closed the transaction until after the accident."   Mr. Thorne did not read the policy but accepted Mr. Burns explanation in regard to its terms.   Mr. Burns, who had known

Mr. Thorne twenty years, knew of the imperfection of his eye and the malformation of his hand.    Mr. George E. Macomber, President of the Macomber, Farr & Whitten Company, says in an affidavit which was admitted as evidence: "I have known Mr. Fred S. Thorne for more than twenty years and observed long ago that his right hand was defective and there was some trouble with his right eye."    But Mr. Macomber was not present when the policy of insurance was issued and had no actual knowledge of the application for the policy.    Item 8 of the warranties in the application reads: "The applicant is in sound condition mentally and physically, having correct habits and no impairment of sight or hearing except    .    .    .    ."    Upon this state of facts two questions may arise, (1)    Can the constructive knowledge of Mr. Macomber as to the plaintiff's physical condition be regarded as a waiver of Item 8, and (2) can the knowledge of Mr. Burns be regarded in this transaction as the knowledge of the defendant company.    As a decision upon the second point will be conclusive of the issue, it becomes inexpedient to consider the first.    The question then is, should the knowledge of Burns in procuring this policy be regarded as that of the defendant?    We think it should, under the doctrine of estoppel.

R. S., chapter 49, sec. 93, provides as follows: "All notices and processes which, under any law, by-law or provision of the policy, any person has occasion to give or serve on any such company, may be given to or served on its agent, or on the commissioner, as provided in the preceding section, with like effect if given or served on the principal.    Such agents and the agents of all domestic companies shall be regarded as in the place of the company in all respects regarding any insurance effected by them.    The company is bound by their knowledge of the risk and of all matters connected therewith.    Omissions and misdescriptions known to an agent shall be regarded as known to the company, and waived by it as if noted in the policy."    This statute applies to life insurance as well as fire insurance companies.    *Marston* v. *Insurance Co.*, 89 Maine, 266.    The defendant's home office was in New York City. Its representative in this State was the corporation, Macomber,

Farr & Whitten. Through this corporation it transacted its business and dealt with all its policy holders in Maine. This corporation appears to have been more than a general agent. It had authority to issue policies direct from its office and did so issue the policy in question. The same day that the application was taken to this office, the policy, signed in blank by the officers of the home company, was written and countersigned by its representative in this State, delivered to Mr. Burns and by him delivered to the plaintiff. This policy could not have gone to New York and returned the same day. They were not only to be regarded under the statute "as in the place of the company in all respects," but were as a matter of fact subrogated to the authority of the company to issue policies, at least, to issue this policy to the plaintiff. Had they sent one of their office force to Mr. Thorne and had he done precisely what Mr. Burns did, and knew precisely what Mr. Burns knew with respect to the applicant, could it be possible that the defendant company could repudiate the acts and knowledge of this office employee on the ground that he was not its agent? If so, the statute intended for the protection of the assured becomes a deception and an open door to the commission of fraud. The defendant could receive all the benefits of premiums without the assumption of any of the risks of insurance. But what is the distinction between sending out an office employee to solicit this policy, and ratifying the acts of Mr. Burns who had solicited it? Mr. Thorne had no knowledge of the company in which he was to be insured. His application was made out by Mr. Burns who had a full knowledge of the risk. Mr. Burns took the application away and returned with a policy duly issued by the defendant company for which he paid the required premium. By delivering the policy to Mr. Burns to be by him delivered to the plaintiff, Macomber, Farr & Whitten, by that act made Mr. Burns their agent. But when they made him their agent they were presumed to have knowledge that whatever Mr. Burns knew of the physical defects of the assured they would be charged with knowing. The statute will not permit an authorized agent to escape responsibility by using dummies. The Macomber, Farr & Whitten Company were there-

fore put upon their inquiry as to whether Mr. Burns was cognizant of any physical defects, knowledge of which might be regarded as a waiver of any warranty. Not having made inquiry, which it may be presumed would have revealed Burns' knowledge, they must now be estopped from asserting that they did not know of the defects of which Burns knew. Therefore Mr. Burns' knowledge became their knowledge, and their knowledge, under the statute, became that of the defendant company. We think the logical deduction from the facts is that the defendant company should under the statute be made chargeable with knowledge of the physical defects of the assured, and held to have waived so much of the warranty in the application as related to them.

There is another ground upon which the defendant should be estopped from asserting as a defense that the physical defects of the assured were facts "entirely unknown to the defendant company." The defendant company appointed Macomber, Farr & Whitten its agent at Augusta. This agent issued the policy in question through Burns as agent or broker, it is immaterial which. Thorne, it seems, had neither knowledge or care as to the name of the company in which he might have a policy. He left this entirely with Burns. He acted in good faith. Fraud is not even suggested. He accepted without question the policy issued by the defendant, countersigned by Macomber, Farr & Whitten Company and delivered to him by Burns, and paid in full the premium required. He did not solicit the policy. This was done by Burns. He is therefore entirely innocent of any agency whatever in producing the situation from the existence of which, he or the defendant company must suffer, even upon the assumption that the defendant company was not chargeable with the knowledge of Burns. Grant that the defendant had no actual notice of such knowledge, it, nevertheless, was the moving cause tending to furnish the transaction of which Thorne would become, under the defendant's contention, the innocent victim. It is incomprehensible that Thorne had he understood the facts would have paid a premium for a worthless policy. Therefore the conditions set in motion through the agency of the defendant, induced the plaintiff to do what he would not otherwise have done.

The case consequently falls fairly within the rule laid down in *Packard* v. *Insurance Co.*, 77 Maine, 144, in which it is said: "It is common knowledge that the authority of the agent comprises not what is expressly conferred, but also as to third persons, what he is held out as possessing. Hence the principal is frequently bound by the act of his agent, performed in excess, or even in abuse of his actual authority; but this is only true as between the principal and third persons, who, believing, and having a right to believe, that the agent was acting within the scope of his authority, would be prejudiced if the act was not considered that of the principal. . . The doctrine is established to prevent fraud and proceeds upon the ground that when one of two innocent persons must suffer from the act of a third, he shall sustain the loss who has enabled the third person to do the injury."

It is the opinion of the court that the defendant is liable for whatever may be found due under the stipulations of the policy.

In the schedule of warranties the plaintiff's occupation is set down Item 4, "Member of Firm or employed by Armour & Co. as Manager of Gardiner Beef Company." His duties are described: "Office duties and travelling only." Article 3 of the General Agreement reads: "If the assured is injured, fatally or otherwise, while at work pertaining to any occupation classed with this company as more hazardous than that stated in the schedule, the company's liability shall be only for such proportion of the principal sum or other indemnity as the premium paid will purchase at the rate fixed by this company for such increased hazard." The report shows that the work which the plaintiff was doing at the time of the accident was performed outside the office, but in the refrigerator connected with the office. On the 17th day of December, 1907, the plaintiff whose business was Manager of Armour's Refrigerator in Gardiner, Maine, went into the refrigerator to direct the hanging of lambs' carcasses from one truck to another, and in illustrating to the workmen how to do the work, took hold of one carcass, and as he lifted it away from the hook, another just behind swung around so that a projecting bone struck him in his right eye, cutting it so seriously that its removal was necessary and was done the

same day. The plaintiff's vocation is stated in the application as that of Manager of Gardiner Beef Company; his duties, as office duties; not, however, the office duties of a clerk, but the office duties of a Manager, or General Superintendent. That is to say his employment was not to be classed with that required in the performance of the manual labor in operating the refrigerator but with that necessary to the oversight and direction of its affairs, from the office. It is too obvious for discussion, that the business manager of a concern, the bulk of whose business is transacted outside the office, cannot superintend the work without leaving the office.

From the nature of the business then is to be implied the duties and responsibilities of his employment. As head of the concern in Gardiner, he was solely responsible for its management. He was superintendent of every department and responsible for every detail of the business. The designation of his office therefore by necessary implication not only authorized but required him to visit every part of the establishment, to direct in every detail of the work and if necessary point out and illustrate how it should be done. To hold then that a person designated as manager of a business concern could not step from his office, to direct the performance of any part of the work, without being charged under an insurance contract with engaging in work defined in the policy is extra hazardous, would be to put a serious check upon the transaction of business, or cut down the indemnity for which a policy holder had fully paid, and to which he would be otherwise entitled.

Article 3, above quoted did not contemplate the inhibition of these acts, the performance of which would be necessarily implied from the vocation named in the policy. This article was rather intended to apply to a regular occupation or business, engaged in by the assured, in a class other than that named in the policy. As was said in *Eaton* v. *Insurance Company*, 89 Maine, 570, "This provision relates to the occupation, employment or business — a vocation, and not an avocation, occasional, exceptional and outside his regular vocation." Upon this point *Berliner* v. *Travelers Ins. Co.*, 121, Cal. 458, is pertinent. The court say: "The fact that the insured is killed or injured while engaged temporarily in an act

or occupation classed as more hazardous than the one in which he was accepted, does not limit his recovery to the amount provided for such more hazardous risk or occupation, when there has been no fraudulent attempt to mislead. The merchant who at one time measures a few bushels of grain, at another time hangs a few rolls of wall paper upon his own premises, at another drives horses in a carriage or wagon, or at another rows a boat for exercise or recreation, does not change his occupation so as to change his class under the insurer's classification of risks, or becomes at these several times, a grain measurer, a paper hanger, a teamster, or a boatman, and the word occupation refers only to a vocation, profession, trade, or calling in which the insured is occupied for trade or profit, and does not preclude him from performing such actual acts and such duties as are mere incidents in the daily life of men in any occupation, or engaging in acts of exercise or diversion." See also *Hess* v. *Preferred Masonic N. Acc. Ass'n*, 112 Mich. 196 ; *Fox* v. *Masons' Frat. Acc. Ass'n*, 96 Wis. 390 ; *Holiday* v. *American Mut. Acc. Ass'n*, 103 Iowa, 178.

Under a fair interpretation of Item 4, in the Schedule of Warranties, specifying the plaintiff's occupation and his duties, we think he is entitled to recover the full amount claimed in his declaration for indemnity and for the operation upon his eye, amounting to $1676.66.

*Judgment for the plaintiff for $1676.66, with interest to be added from July 10, 1908.*