Argued October 14, affirmed December 7, 1926.

## D. C. WILLIAMS ET AL. *v.* PACIFIC STATES FIRE INS. CO.

(251 Pac. 258.)

**Pleading—Amended Complaint, Pleading Estoppel of Insurer to Rely on Misrepresentations, Held Sufficient, After Verdict.**

1. Amended complaint, in action on fire policy, pleading estoppel because of waiver of insurer to rely on misrepresentations, *held* sufficient, after verdict.

**Action—Estoppel or Waiver is Available Defense, in Action at Law.**

2. Estoppel or waiver may be available defense, in an action at law.

**Insurance—Policy, Sufficiently Showing Agreement of Parties, When Properly Construed in View of Extrinsic Facts, Need not be Reformed.**

3. If policy properly construed in light of extrinsic facts has same meaning as it would if reformed, and sufficiently shows agreement of parties, no reformation is necessary.

**Insurance—Policy Need not be Reformed, Where Insurer has Waived or is Estopped to Rely on Breach.**

4. Reformation of insurance policy is not necessary, where insurer has waived or is estopped to rely on breach of condition of policy.

**Insurance—Instruction, Submitting Question of Agency of Persons Placing Insurance as Estopping Insurer from Setting Up Misrepresentations, Held Proper, Under Evidence.**

5. In action on fire policy instruction, submitting question of agency as would estop insurer from setting up alleged misrepresentations, *held* proper, under evidence showing that insurer had solicited business and paid agent's commission on policy.

---

2. Estoppel in actions at law, see note in 57 Am. Dec. 785. See, also, 10 R. C. L. 841.

Insurance—Insurer Is Estopped from Claiming That Error or Oversight of One Acting as Agent in Making Representations or Warranties in Policy Would Render Policy Void.

6. Insurance company, accepting policy submitted by one acting as its agent, is estopped from claiming that error or oversight on part of such person in making representations or warranties in policy would render policy void.

Principal and Agent—Principal may not Ratify Portion of Unauthorized Acts of Agent and Reject Portion Which Assumes Obligations.

7. One cannot adopt or ratify a portion of unauthorized acts of agent which is beneficial to principal and reject that portion which assumes obligations.

Insurance—Insurer may not Avoid Policy Because of Misstatements or Misrepresentations by Agent, and not Due to Fraud or Bad Faith of Insured.

8. Insurer may not avoid policy by taking advantage of any misstatement, misrepresentation, or concealment of fact material to risk which is due to mistake, fraud or negligence, or other fault of its agent, and not to fraud or bad faith on part of insured.

Insurance—Insurer may not Disprove Truth of Statements by Authorized Agent in Filling Up Application, With Knowledge of Facts.

9. 'Doctrine of estoppel *in pais* prevents insurer from disproval of statements made by its authorized agent in filling up an application, with knowledge of the facts.

Insurance—Insurer may not, by Stipulation, Escape Responsibility for Act of Agent in Waiving Falsity of Answer to Questions in Application.

10. Insurer, by stipulation in application or policy, cannot escape responsibility for act of agent in waiving falsity of answers to questions in the application.

Insurance—Insured must Establish Innocent Intent or Good Faith, Where Policy Contains Misstatements Waived by Insurer's Agent.

11. Insured has burden of establishing innocent intent or good faith in procuring insurance policy containing misrepresentations waived by insurer's agent.

Evidence—Parol Evidence is Admissible to Show Insurer's Agent Misstated or Omitted Facts in Application, With Actual Knowledge Thereof.

12. Parol evidence is admissible to show that agent of insurer, when acting within apparent scope of authority in filling out application, with knowledge of facts, misstated them in application without consent or knowledge of applicant or omitted to insert certain facts therein.

---

7. See 21 R. C. L. 923.
9. See 14 R. C. L. 1174.

Insurance—Laws, Forbidding Foreign Fire Insurance Companies to Do Business Except Through Agents, Held Inapplicable to Local Company (Or. L., §§ 6333, 6388, subd. 1).

13. Sections 6333, 6388, subdivision 1, Or. L., relating to foreign companies doing business through duly authorized agent, *held* inapplicable to local insurance companies, in view of express provisions therein.

Insurance—Statements in Policy, Issued on Oral Application, are not Warranties Merely Because Called Such Therein (Or. L., § 6351).

14. Merely calling statements in insurance policy, issued on oral application, warranties does not make them so, or give them greater force than if based on written application in which statements, under section 6351, Or. L., are deemed to be representations, and not warranties.

Insurance—Applicant Does not have Absolute Duty to Read Policy in Anticipation of Fraud or Mistake of Agent.

15. The law does not impose an absolute duty on applicant to read policy in anticipation of fraud or mistake on part of agent.

Trial—Testimony of Owner and Purchaser on Conditional Sale Contract of Value of Truck Destroyed by Fire Held Sufficient.

16. Testimony of owner and purchaser on conditional sale contract, both of whom were automobile dealers, as to value of truck destroyed by fire, *held* sufficient; there being no objection.

---

Agency, 2 C. J., p. 481, n. 41, p. 482, n. 42.
Estoppel, 21 C. J., p. 1118, n. 3.
Fire Insurance, 26 C. J., p. 67, n. 46, p. 72, n. 19, p. 107, n. 80, 84, p. 154, n. 64, p. 297, n. 92, p. 308, n. 38, p. 309, n. 43, 46, 47, 49, 51, 53, 54, p. 550, n. 86, p. 552, n. 91, p. 567, n. 87.
Pleading, 31 Cyc., p. 82, n. 13.

From Multnomah: DALTON BIGGS, Judge.

Department 2.

This is an action on a fire insurance policy. The case was tried to the court and a jury, resulting in a verdict in favor of plaintiffs, and a judgment on the verdict. Defendant appeals. The policy upon which the action is brought is made a part of the complaint.

The property insured was a Velie auto-truck which was destroyed by fire on June 24, 1922, during the term of the policy. The defendant answered admitting it issued its insurance policy No. 34,426 in substantially the form set out in the exhibit to the com-

plaint, and denied the other material allegations of the complaint, except the partnership of plaintiffs and the corporate character of the defendant; and set up as an affirmative defense that the insured made certain statements which by the terms of the policy are expressly made warranties. The statements, so far as material, as stated in appellant's brief, are as follows:

1. That the automobile was purchased by the insured in April, 1922, new.

2. That the automobile is fully paid for by the insured, and is not mortgaged or otherwise encumbered, except $4,000 due the United States National Bank.

3. The uses to which the automobile described are, and will be put, are commercial.

4. The automobile described is usually kept in private garage located at Oregon City, Oregon.

And that these warranties were false.

At the conclusion of plaintiffs' case in chief the defendant moved for a nonsuit, which was denied and which is assigned as error. At the conclusion of all the testimony the defendant moved for a directed verdict in its favor, which was likewise denied and is assigned as error.    AFFIRMED.

For appellant there was a brief over the name of *Messrs. Veazie & Veazie,* with oral arguments by *Mr. Gus. C. Moser,* and *Mr. John C. Veazie.*

For respondent there was a brief and oral argument by *Mr. W. F. Magill.*

BEAN, J.—At the trial the plaintiffs by consent amended their complaint by adding a new paragraph as follows:

"That said policy of insurance, Exhibit 'A' was furnished and delivered to the plaintiffs at the United

States National Bank of Portland, Oregon, by the defendant's agent, who was acquainted with all the facts in the premises, or was correctly informed thereof, or failed to inquire concerning the same, and who transmitted to the defendant the information upon which the same was written; that the plaintiffs never saw said policy until after the fire and did not know the contents thereof, and did not know that it stated said automobile was purchased in April, 1922, and that the actual cost was $5,000; that the actual cost was $4800, and the date of the agreement for purchase was about October, 1920, but said machine had never been delivered to the purchaser; that the statements hereinabove referred to were the mistakes of the defendant's own agent and not of these plaintiffs, and the defendant ought to be and is, therefore, estopped to rely upon said mistakes or any mistakes of its agent, as a defense to this action."

1. Defendant criticises the pleading of plaintiff, and while it may not be perfect it was not demurred to and there was no motion against the same. The pleading practically follows the precedents in the cases of *Koshland* v. *Home Ins. Co.*, 31 Or. 321 (49 Pac. 864, 50 Pac. 567), *Koshland* v. *Fire Assn.*, 31 Or. 362 (49 Pac. 865), and *Koshland* v. *Hartford Ins. Co.*, 31 Or. 402 (49 Pac. 866), sometimes referred to as the Cunningham cases, and which were hotly contested. We think the plea is sufficient after verdict: *Walker* v. *Fireman's Fund Ins. Co.*, 114 Or. 560 (234 Pac. 542.)

2-4. Estoppel or waiver may be availed of in an action at law. If the policy when properly construed in the light of extrinsic facts has the same meaning it would have if reformed and sufficiently shows the agreement of the parties, no reformation is necessary. Reformation is not necessary where the insurer has waived or is estopped to rely upon a breach of a condition of the policy: 26 C. J. 107, § 106; *Mercer* v.

*Germania Ins. Co.,* 88 Or. 411 (171 Pac. 412); *Baker* v. *State Ins. Co.,* 31 Or. 41 (48 Pac. 699, 65 Am. St. Rep. 807); *Ashley* v. *Pick,* 53 Or. 410, 417 (100 Pac. 1103), and other Oregon cases cited herein.

The rule is stated in 2 Wood on Fire Insurance, 1163, as follows:

"When the insurer issues a policy to the assured without any written application, containing conditions inconsistent with the risk * * the insurer knowing the facts, it is estopped from setting up a breach of such conditions in defense to an action upon the policy, and the insured may maintain an action for a loss under the policy, without seeking its reformation, as the doctrine of estoppel and waiver comes in aid of the assured. And the same rule prevails when the insurer ought to have known the facts constituting the alleged breach."

One of the principal assignments of error relied upon by defendant is, that the court erred in refusing the requested Instruction No. 2 by defendant in the bill of exceptions, and giving in lieu thereof the instruction covered by assignment of error No. 18. This is closely related to the several other errors assigned, including those involving the motion for a nonsuit and the motion for a directed verdict in favor of defendant. The requested instruction reads as follows:

"You are instructed that Lamping & Co., acting through A. D. Trunkey, its manager, must be presumed in law under all of the evidence introduced in this case, to be the agent of the plaintiffs, and whatever representations were made by Mr. Trunkey to the defendant Company in procuring this policy, must be deemed by you to be the representations of the plaintiffs."

5. The instruction given in lieu thereof is as follows:

"It is for you to determine, first, in this case, whether or not those representations were made by the plaintiff, or the plaintiffs' agent, and, second, if they were false, and, third, if they were material. In determining whether those representations were made by the plaintiffs' agent, or the defendant's agent, in the first instance, I instruct you that direct evidence is not indispensable to prove agency, but it may be shown by circumstances such as the relations of the parties to each other and their conduct with reference to this subject matter,—of the business in hand, and if you find from the evidence in this case that Mr. Trunkey, or Lamping & Co. had an agreement or an arrangement with the defendant company whereby he, or they were to be paid commissions upon business he or they brought to the defendant, and that the defendant was accustomed to write policies of insurance upon risks solicited by Trunkey or Lamping & Co., or that Lamping & Co. turned said policy over to him, or for him to deliver and receive the premiums upon such policies, then Trunkey and Lamping & Co. was the agent of the defendant company and you would be justified in so finding, if you find those to be the facts."

These assignments of error embrace the pivotal point of the case and may be considered together.

It appears from the record that the plaintiffs applied to Mr. Trunkey, who was the manager of Lamping & Co., general insurance agents in Portland, Oregon, for insurance on certain auto-trucks. There was no written application, but the negotiations were by conversations over the telephone. Mr. Trunkey was requested to deliver the policy to the First National Bank of Portland as he has other policies procured by him for plaintiffs. Without any knowledge on the part of the plaintiffs, Mr. Trunkey procured a policy from the defendant with whom Lamping & Company, pursuant to an arrangement made with

the defendant Company, was placing all of its automobile insurance at that time, and turned it over to the bank as requested. Plaintiff never saw the policy until after the fire destroyed the insured property. Mr. Trunkey asked certain information from the respondents and was given correct information of the 1920 model, 3½-ton Velie truck Motor No. 15246, factory No. 8698. The list price of the truck, $3,950, was obtained from a manual or price list. As to other matters relating to the policy, Mr. Trunkey made no inquiry, but assuming that he knew the facts he furnished the information to the defendant upon his own responsibility.

It is because of some of this information furnished to it by Mr. Trunkey, and not by plaintiffs, that the defendant claims it is relieved from any liability on its contract.

6, 7. The policy was issued to "Seth Leavens and/or D. C. and A. L. Williams, as their interests may appear." The address of the insured is given as Oregon City, Oregon. The policy is dated April 4, 1922, for the term of one year. The amount of insurance is $3,500.

The further statement contains in substance the following facts with respect to the purchase of the automobile:

"Actual cost to insured, including equipment— $5,000.

"The automobile described is fully paid for by the insured, and is not mortgaged or otherwise encumbered, except as follows: $4,000 due U. S. Nat. Bank.

"The uses to which the automobile described are and will be put, are commercial.

"The automobile described is usually kept in private garage, located at Oregon City, Oregon."

It appears that Mr. T. H. Williams, the president and manager of the Pacific States Fire Insurance Company, who signed and issued the policy involved herein, had solicited business from Mr. Trunkey, or Lamping & Company, and paid the agents full commission on business, procured by him or it, and turned over to the defendant company. A Loss Payable clause in favor of the United States National Bank was also attached to the policy at the request of the Williamses, as they were owing the bank some money with which they purchased cars. The truck was purchased when new by plaintiffs and sold to Seth Leavens about October 5, 1920. Leavens paid thereon at the time, $1,000, and executed a conditional sales contract to D. C. and A. L. Williams, agreeing to pay the balance $3,800. It was then the expectation that the truck would soon be taken out and used in road hauling work by Seth Leavens who, in addition to dealing in automobile accessories, did truck hauling work. He had several other trucks. The hauling business slackened up and the new truck was not needed for the work. It was understood between plantiff and Leavens that the truck should remain with plaintiffs until taken out for road work, when Leavens should begin to make additional payments therefor. The truck so remained in plaintiffs' building until it was destroyed by fire.

Plaintiffs were indebted to the United States National Bank and desired the Loss Payable clause attached to the policy in favor of the bank. The insurance company paid the regular agent's commission to Lamping & Company. The insurance company clothed Trunkey or Lamping & Company with all the indicia of agency in the transaction, and accepted all the fruits thereof.

The policy was issued and signed by T. H. Williams, the president of the insurance company, at its home office in Portland, Oregon. The transaction was no different, by Trunkey or Lamping & Company soliciting the insurance and obtaining the information in regard thereto, than it would have been if the company had sent out an office employee from its home office to solicit this policy. The insurance company, by accepting the benefits of the acts of Lamping & Company or Trunkey, adopted or ratified all of its or his acts. One is not allowed, under the law, to adopt or ratify a portion of the unauthorized acts of its agent which is beneficial to the principal, and reject that portion which assumes obligations: Mechem, Agency, §§ 128, 130–151; *La Grande Nat. Bank* v. *Blum,* 27 Or. 215 (41 Pac. 659); *McLeod* v. *Despain,* 49 Or. 536 (90 Pac. 492, 92 Pac. 1088, 124 Am. St. Rep. 1066, 19 L. R. A. (N. S.) 276); *Thorne* v. *Casualty Co.,* 106 Me. 274 (76 Atl. 1106). The defendant company is estopped from claiming that any error or oversight of A. D. Trunkey, or Lamping & Company, acting as its agent, in making the representations or warranties contained in the policy, would render the policy void. A contrary holding would open wide the door to fraud and permit an insurer by having its agent insert in a policy of insurance erroneous statements without the knowledge or assent of the assured to collect the premiums and render it optional with the insurance company to pay any loss occurring. The law does not sanction such a rule.

8. The insurer will not be permitted to avoid the policy by taking advantage of any misstatement, misrepresentation or concealment, of a fact material to the risk, which is due to the mistake, fraud, negligence or other fault of its agent and not to fraud or bad faith on the part of the insured: 26 C. J., § 381;

*Koshland* v. *Hartford Ins. Co.,* 31 Or. 402 (49 Pac. 866) ; *Arthur* v. *Palatine Ins. Co.,* 35 Or. 27 (57 Pac. 62, 76 Am. St. Rep. 450) ; *Allesina* v. *London Ins. Co.,* 45 Or. 441 (78 Pac. 392, 2 Ann. Cas. 284) ; *Hardwick* v. *State Ins. Co.,* 20 Or. 547, 560 (26 Pac. 840) ; *Hahn* v. *Guardian, etc.,* 23 Or. 576, 579 (32 Pac. 683, 37 Am. St. Rep. 709) ; *Germania Ins. Co.* v. *Wingfield* (Ky.), 57 S. W. 456; *Teutonia Ins. Co.* v. *Ewing,* 90 Fed. 217 (32 C. C. A. 583) ; *Queen Ins. Co.* v. *Union Bank,* 111 Fed. 697 (49 C. C. A. 555) ; *Standard Auto Assn.* v. *Russell,* 199 Ky. 470 (251 S. W. 628) ; *Shockey* v. *Fidelity Phenix Fire Ins. Co.* (Mo. App), 191 S. W. 1049; *Mowry* v. *Agricultural Ins. Co.,* 64 Hun, 137 (18 N. Y. Supp. 834) ; *Farmers' Mut. Ins. Assn.* v. *Tankersley,* 13 Ala. App. 524 (69 South. 410) ; *Dodge* v. *Grain Shippers' Mut. F. Ins. Assn.,* 176 Iowa, 316 (157 N. W. 955) ; *Leisen* v. *St. Paul F. & M. Ins. Co.,* 20 N. D. 316 (127 N. W. 837, 30 L. R. A. (N. S.) 539) ; *Aetna Ins. Co.* v. *Brannon* (Tex. Civ. App.), 91 S. W. 614. See, also, *Aetna Ins. Co.* v. *Brannon,* 99 Tex. 391 (89 S. W. 1057, 13 Ann. Cas. 1020, 2 L. R. A. (N. S.) 548) (recognizing the rule) ; *Medley* v. *German Alliance Ins. Co.,* 55 W. Va. 342 (47 S. E. 101, 2 Ann Cas. 99). The above rule is applied although the policy expressly makes the statement in the application warranties. 26 C. J. 309, § 381; *Continental Ins. Co.* v. *Pearce,* 39 Kan. 396 (18 Pac. 291, 7 Am. St. Rep. 557) ; *Rissler* v. *American Cent. Ins. Co.,* 150 Mo. 366 (51 S. W. 755) ; *Bennett* v. *Agricultural Ins. Co.,* 106 N. Y. 243 (12 N. E. 609) ; *Owens* v. *Holland Purch. Ins. Co.,* 56 N. Y. 565; *Smith* v. *People's Mut. Live Stock Ins. Co.,* 173 Pa. 15 (33 Atl. 567).

9. The doctrine of estoppel *in pais* prevents the insurer from disproving the truth of statements made by his authorized agent in filling up an application

with knowledge of the facts: 26 C. J., p. 204, § 381; *Liverpool etc. Ins. Co.* v. *Payton,* 128 Ark. 528 (194 S. W. 503); *Continental Ins. Co.* v. *Pearce,* 39 Kan. 396 (18 Pac. 291, 7 Am. St. Rep. 557); *Scott* v. *German Ins. Co.,* 69 Mo. App. 337; *Thomas* v. *Hartford F. Ins. Co.,* 20 Mo. App. 150.

10. If an agent ends an application prepared by himself without the authority of the insured, or includes an unauthorized representation, or if the insurer issues its policy in reliance upon the agent's independent investigation, in the absence of *mala fides* on the part of the insured, the insurer cannot claim that the policy is vitiated. It is immaterial that the policy provides that the knowledge of the agent not contained in the application shall not be binding on the insurer. An insurer by stipulation in the application or policy cannot escape responsibility for the act of his agent in waiving the falsity of an answer to questions in the application: 26 C. J., 309, § 381, and cases there cited.

11. The burden of establishing innocent intent or good faith in procuring the insurance policy is on the policy-holder in such a case: *Hayes* v. *Auto Ins. Exch.,* 126 Wash. 487 (218 Pac. 252); *Standard Auto Ins.* v. *Russell,* 199 Ky. 470 (251 S. W. 628); *Eaton* v. *Nat. Cas. Co.,* 122 Wash. 477 (210 Pac. 779).

12. It is stated in 2 Joyce on Insurance, page 1237, Section 505, in substance, that it may be considered a well-settled rule that parol evidence is admissible to show that the agent of the company, at the time when acting within the apparent scope of his authority in filling out the application, had been truly and fully informed by the applicant of the facts, or that he had actual knowledge thereof, and that

he had nevertheless without the authority, consent or knowledge of the applicant, misstated the facts in the application, or that he had omitted to insert certain facts therein. Such evidence is not admitted to vary or contradict the writing, but is based upon the principle that the writing was procured under such circumstances that it cannot lawfully be used against the party whose name is signed to it. The author cites a wealth of authorities in the notes to this section. It, of course, would follow that no stricter rule would be applied where the policy of insurance is issued without any application therefor being signed.

There are cases holding contrary to the rules above referred to, but such rules, in so far as they have been passed upon, have been adopted in this state: *Lindstrom* v. *National Life Ins. Co.*, 84 Or. 592 (165 Pac. 675). In this case Mr. Justice Moore quoted with approval a headnote in *Mutual Reserve Fund Life Assn.* v. *Cotter*, 81 Ark. 205 (99 S. W. 67), as follows:

"Where an applicant for life insurance correctly answered the questions propounded to him by the insurance company's medical examiner, but without his knowledge the examiner wrote down incorrect answers, the insurance company is estopped to take advantage of the wrong of its own agent."

In *Walker* v. *Fireman Ins. Co.*, 114 Or. 545 (234 Pac. 542), the sixth syllabus reads thus:

"Where all the automobiles of insured were covered by open policy, requiring issuance of covering note describing each car so covered, insured, who merely called attention of insurer's agent to particular automobile to be insured, *held* not responsible for mistaken representations of agent in describing automobile."

13. It is contended on behalf of defendant that under the Oregon statutes, Trunkey or Lamping & Company could not be the agent of the defendant in any event. First citing Section 6388, subdivision 1, Or. L. This section relates to foreign fire insurance companies, and the last sentence in that section provides: "this section shall not apply to policies issued directly from the home office of any company organized under the laws of this state or having its home office located in this state." Defendant also cites Section 6333, Or. L. This section also relates to companies authorized to transact insurance in this state other than life insurance companies "and not incorporated under the laws of this state." These sections make provision for transacting insurance business through regularly commissioned and licensed resident agents, in order that the state may obtain the tax on premiums to which it is entitled.

Subdivision 1 of Section 6333 provides in part, as follows:

"(1) *Section Does not Apply.* This section shall not apply to the following contracts:

"(a) Policies issued from Home Office of Domestic Company.

"Policies issued directly from the home office of any company organized under the laws of this state or having its home office located in this state, and by mutual associations authorized to transact business in this state; * * "

The policy involved in this case was issued directly from the home office of the defendant company. It was organized under the laws of this state and has its home office located therein. The contention is not well grounded.

Section 6351, Or. L., is as follows:

"Every contract of insurance shall be construed according to the terms and conditions of the policy, except where the contract is made pursuant to a written application therefor, and such written application is intended to be made a part of the insurance contract; unless as otherwise provided by this act, if the company shall deliver a copy of such application to the assured, thereupon such application shall become a part of the insurance contract. Provided, that matters stated in the application shall be deemed to be representations and not warranties. And failing so to do it shall not be made a part of the insurance contract. Provided, however, that the provisions of this section shall not apply to fidelity and surety contracts."

14. These provisions refer to written applications, but it cannot be thought that where there is a failure to require a written application, statements contained in a policy under the heading of "warranties," such representations would be of any more force than they would if based upon a written application deliberately signed by the insured. "Merely calling the statements warranties does not make them so." *Wheaton* v. *Insurance Co.*, 76 Cal. 415 (18 Pac. 758, 9 Am. St. Rep. 216). The policy in question contains the following clause:

"This entire policy shall be void if the insured or his agent has concealed or misrepresented in writing or otherwise any material fact or circumstance concerning this insurance or the subject thereof; or if the insured or his agent shall make any attempt to defraud this company either before or after the loss."

In *Moore* v. *Aetna Life Ins. Co.*, 75 Or. 47 (146 Pac. 151, Ann. Cas. 1917B, 1005, L. R. A. 1915D, 264), at page 53 of 75 Or., Mr. Justice McBride records the following language:

"It is a thoroughly settled rule in the construction of a policy of insurance, which is reasonably susceptible of two interpretations, that that meaning will be given to it which is more favorable to the insured."

15. In the instant case it should be borne in mind that the plaintiffs acted in good faith and applied for insurance upon the truck, and correctly gave all of the information requested by the agent soliciting the insurance and, as the policy was deposited in the bank as soon as it was issued, plaintiffs never saw it until after the fire, and had no knowledge of any erroneous statements or any opportunity to read the policy. The law does not impose an absolute duty upon the applicant to read his policy when he receives it, in anticipation of a fraud or mistake on the part of the agent: *Kister* v. *Lebanon Mut. Ins. Co.*, 128 Pa. 553 (18 Atl. 447, 15 Am. St. Rep. 696, 5 L. R. A. 646). "The mere failure of the insured to inform himself of the insertion of false answers in the application which has been filled out by the agent of the insurer, does not convict him of a lack of good faith." 3 Cooley's Briefs on Insurance, p. 2572.

In *Hahn* v. *Guardian Assur. Co.*, 23 Or. 576 (32 Pac. 683, 37 Am. St. Rep. 709), at page 579 et seq. of the Report, we find the following quotations and language by Mr. Chief Justice LORD:

"Upon the issue thus presented relative to Mr. Ackerman's powers as agent in the premises, the decision rested with the jury under proper instructions from the court. * *

"As to third parties, the agent should, in the absence of notice to the contrary, be regarded as possessing all the powers his occupation fairly imports to the public. Under this rule, an agent who solicits the insurance, takes the application, receives the premium, and delivers the policy, may, in our opinion,

by his contract or acts bind his company * * in the absence of knowledge upon the part of the assured that his powers in this respect have been restricted.''

The question of the agency of Trunkey, or Lamping & Company, was one of fact to be determined by the jury, and the trial court properly submitted such question to the jury and refused to charge that Lamping & Company, under the evidence, must be presumed to be the agent of plaintiffs as requested by defendant: *Hahn* v. *Guardian, supra;* 1 Cooley's Briefs, 66, 67; *Wortham* v. *Illinois Life Ins. Co.,* (32 Ky. Law Rep. 827, 107 S. W. 276). In *Kausal* v. *Minnesota Farmers' Mut. Fire Ins. Assn.,* 31 Minn. 17 (16 N. W. 430, 47 Am. Rep. 776), the syllabus reads:

''Agents of an insurance company, authorized to procure applications for insurance, and to forward them to the company for acceptance, must be deemed the agents of the insurers in all that they do in preparing the application, or in any representations they may make as to the character or effect of the statements therein contained. Hence, when such agent, either by his direction or direct act, makes out an application incorrectly, notwithstanding all the facts are correctly stated to him by the applicant, the error is chargeable to the insurer and not to the insured. This is the rule in the case of 'mutual' as well as of 'stock' or 'proprietary' companies.''

The defendant was not required, under the Code, to use the standard fire policy adopted by the legislature, in insuring an automobile: Or. L., § 6342, subd. (3).

16. It is urged on behalf of defendant that there was no evidence whatever of the value of the truck at the time of the fire. That the market value at the time and place of destruction should be proved. The sworn statement of A. L. Williams and Seth Leavens

was admitted in evidence without objection, to the purport that the automobile insured, at the time of the loss, was of the value of $4,800. There was also testimony of the list, or wholesale price, of the automobile without freight or dealer's profits. A. L. Williams was a dealer in automobiles, as shown by the testimony, and it was competent for him to testify as to the value of the truck, so also was Seth Leavens. Whether the testimony produced was the best testimony, as to the value of the truck, need not be considered, as there was no objection to the evidence produced. The truck at the time of the loss was new and there seems to have been no contention as to the value thereof upon the trial of the case. There was some testimony as to the value of the truck at the time it was destroyed. The contention of defendant must be denied: Elliott on Evidence, § 2316; *Dakin* v. *Queen Ins. Co.,* 59 Or. 269 (117 Pac. 419); *Portland Pulley Co.* v. *Breeze,* 101 Or. 249 (199 Pac. 957). The case was fairly submitted to the jury by the charge of the court.

Finding no reversible error in the record, the judgment of the trial court is affirmed.    AFFIRMED.

McBRIDE, C. J., and BROWN and BELT, JJ., concur.