EBELING, Respondent, *v.* BANKERS' CASUALTY CO., APPELLANT.

(No. 4,457.)

(Submitted September 20, 1921. Decided October 10, 1921.)

[201 Pac. 284.]

*Accident Insurance — Change of Occupation — Increase of Hazard—Contracts—Liability of Insurer.*

Accident Insurance — Temporary Change of Occupation — Increase of Hazard—Extent of Insurer's Liability.

1. Where, at the time the insured applied for and was issued an accident insurance policy, he gave his occupation as proprietor of and meat-cutter in a butcher-shop, classified as less hazardous than that of tender of livestock in transit, the contract providing that in case he was injured after change of occupation to a more hazardous one or in doing any act or thing pertaining to any occupation classified as more hazardous, the company would pay only such portion of the indemnity as the premium would have purchased for the more hazardous occupation, and he was injured while temporarily acting as live-

---

1. Accident insurance—Provision for forfeiture or reduction of benefits in event of injury while engaged in more hazardous occupation, or variations of the provision, as applied to occasional or temporary acts, see note in L. R. A. 1915D, 312.

[61 Mont. 58.]

stock tender and while in the act of watching trainmen repair a break in the locomotive, the insurer was liable only for the smaller amount provided for the occupation of tender of livestock in transit.

Same—Contracts—Duty of Courts.

2. Courts cannot make new contracts for parties but must construe and enforce them as they are made, if not in contravention of public policy or violative of express provisions of law.

Same—Change of Occupation—What Constitutes.

3. From the time the shipment of livestock was started on its journey until it reached its destination, the cattle composing it were in transit and the insured, whose regular occupation was proprietor of a butcher-shop and meat-cutter, but who temporarily acted as tender, was a caretaker or tender in transit.

*Appeals from District Court, Big Horn County; Charles A. Taylor, Judge.*

ACTION by Jessie W. Ebeling against the Bankers' Casualty Company. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Order affirmed. Judgment modified and affirmed on condition.

*Messrs. Nichols & Wilson,* for Appellant, submitted a brief; *Mr. Harry L. Wilson* argued the cause orally.

There can be no question as to the validity or enforceability of a provision in an accident insurance policy to the effect that in the event of increased occupational hazard the insurance shall be decreased proportionately. (*Standard Life & Acc. Ins. Co.* v. *Martin,* 133 Ind. 376, 33 N. E. 105.) The contract of insurance depends essentially upon an adjustment of the premium to the risk assumed. (*Kyte* v. *Commercial etc. Assur. Co.,* 149 Mass. 116, 3 L. R. A. 508, 21 N. E. 361; May on Insurance, secs. 172, 245; see, also, *Robinson* v. *Mercer County etc. Ins. Co.,* 27 N. J. L. 134; *American Ins. Co.* v. *Leonard,* 80 Ind. 272; *Standard Life & Acc. Ins. Co.* v. *Carroll,* 86 Fed. 567, 41 L. R. A. 194, 30 C. C. A. 253; *Loesch* v. *Union Casualty & Surety Co.,* 176 Mo. 654, 75 S. W. 621; *Aldrich* v. *Mercantile*

3. What constitutes breach of condition of accident policy relating to occupation of insured, see notes in, 7 **Ann. Cas.** 568; **Ann. Cas.** 1916B, 739.

*Mut. Acc. Assn.,* 149 Mass. 457, 21 N. E. 873; *Employers'
Liability Assur. Corp.* v. *Back,* 102 Fed. 229, 42 C. C. A. 286;
*Standard Life & Acc. Ins. Co.* v. *Taylor,* 12 Tex. Civ. App.
386, 34 S. W. 781.)

*Mr. T. H. Burke,* for Respondent, submitted a brief and
argued the cause orally.

It is well settled in actions on insurance policies, where the
answer admits the loss but alleges a breach of conditions, the
burden of proof is on the defendant. In this case, the burden
of proof was switched to the defendant and it must sustain
that proof by the preponderance of the evidence.

The defendant seeks to escape liability for the maximum
amount because of a certain provision in their policy [see
opinion]. In *Stone's Admr.* v. *United States Casualty Co.,* 34
N. J. L. 371, cited in L. R. A. 1915D, page 112, a similar pro-
vision was construed contrary to appellant's contention. From
the time of the steer incident until the accident, and at that
time, the occupation of the insured was that of a proprietor of
a meat-shop and all of his acts related back and to that occu-
pation, unless it might be said that he was doing an act per-
taining to the occupation of a "spectator," if there be such an
occupation. In any event, he was not doing any act pertaining
to the occupation of "tender in transit" when the injury
occurred.

It is our contention that during all of the time the occupation
of the insured remained "proprietor and meat-cutter in shop,"
but that during the life of the insurance, he might have been
and was engaged in various acts, some of which pertained to
his occupation and others to various other occupations. But
on the completion of each of said special acts, all of his ordi-
nary acts would revert back to and be acts of his general occu-
pation. If Ebeling had been injured while he was in the act
of raising the steer, then the contention of counsel might have
weight. Each of his acts are to be judged by themselves, and

the evidence shows that when he raised the steer ten minutes before the fatal accident, that act was the last thing done in his life pertaining to the occupation of "tender in transit." His standing beside the engine had nothing more to do with "tender in transit" than if he were a paid passenger on the train. (See, also, *Holiday v. American Mutual Acc. Assn.*, 103 Iowa, 178, 64 Am. St. Rep. 170, 72 N. W. 448.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

William O. Ebeling was insured under a policy which classified occupations according to their respective hazards, and designated the amount of insurance which a given premium paid in advance would purchase upon the life of one engaged [1] in any of the different occupations so classified. Ebeling's occupation was given as a "proprietor and meat-cutter in shop," and was included in class D. The occupation of "tender in transit" of livestock was included in class X. The annual premium paid by Ebeling would purchase insurance to the amount of $1,100 upon the life of one engaged in a class D occupation, whereas it would purchase but $275 upon the life of one engaged in a class X occupation. The policy contained the following provision: "In the event that the insured is injured or contracts sickness after having changed his occupation to one classified by the company as more hazardous than that stated in the policy, or while he is doing any act or thing pertaining to any occupation so classified, except ordinary duties about his residence or while engaged in recreation, in which event the company will pay only such portion of the indemnities provided in the policy as the premium paid would have purchased at the rate, but within the limit so fixed by the company for such more hazardous occupation."

About August 30, 1917, Ebeling engaged as a tender in transit of a shipment of livestock from Little Horn, Montana,

to Omaha, Nebraska. When the train reached Owen, Wyoming, on August 31, the locomotive became disabled and the train stopped. Ebeling and the other stock tenders went from the caboose toward the forward end of the train to give attention to a steer that was down in one of the cars and assist it to its feet. When that work was accomplished, they went to the locomotive and stood about watching the trainmen in the work of repair, and while they were so engaged a cylinder head was blown out, striking Ebeling and inflicting injuries from which he died. Plaintiff, the beneficiary named in the policy, brought this action to recover $1,100. The defendant company tendered $275, but the tender was refused. The trial resulted in a verdict and judgment for the amount claimed by the plaintiff, and the defendant appealed therefrom and from an order denying a new trial.

There is not any conflict in the evidence, and for all practical purposes this appeal may be considered as though the case had been submitted upon an agreed statement of facts. The only question for determination is: Was the insured, at the time of his injury, doing any act or thing pertaining to the more hazardous occupation, tender in transit? If he was, the amount of recovery must be reduced to $275. If he was not, the judgment must be affirmed. There is not any conflict of authority respecting the general rules of law applicable to a case of this character, but some conflict growing out of the application of well-settled rules to the facts, and this conflict or confusion arises from the proper construction of the provision in policies which diminishes liability in the event that the injury occurs while the insured is doing any act or thing pertaining to an occupation classified as more hazardous than the one for which the insured was accepted. The earlier accident policies provided only for diminished liability in the event the insured, at the time of his injury, had changed his occupation to one classified as more hazardous, and the courts held generally that the term "changed" was employed in the sense of substitution,

that the performance of an isolated act pertaining to a more hazardous occupation did not constitute a change of occupation, and that the insurance company could not claim the right to have the indemnity diminished by reason of the fact that the insured was injured while in the performance of such isolated act. The leading cases so holding are *Stone's Admr.* v. *United States Casualty Co.,* 34 N. J. L. 371; *North American etc. Ins. Co.* v. *Burroughs,* 69 Pa. 43, 8 Am. Rep. 212; *Baldwin* v. *Fraternal Acc. Assn.,* 21 Misc. Rep. 124, 46 N. Y. Supp. 1016; *Id.,* 29 App. Div. 627, 52 N. Y. Supp. 1136, affirmed 159 N. Y. 561, 54 N. E. 1089; *Berliner* v. *Travelers' Ins. Co.,* 121 Cal. 458, 66 Am. St. Rep. 49, 41 L. R. A. 467, 53 Pac. 918. Later the courts held that, if the act being done at the time the injury was received was one which fairly pertained to the regular employment of the insured, it could not be held that he had changed his occupation by reason of the fact that the act pertained, also, to a more hazardous employment. (*Thorne* v. *Casualty Co.,* 106 Me. 274, 76 Atl. 1106.) Finally, the courts were called on to consider policies containing the provisions quoted above, and in *Smith* v. *Massachusetts Bonding & Ins. Co.,* 179 N. C. 489, 102 S. E. 887, it was held that, if the act being done by the insured at the time of his injury was one pertaining directly to his own occupation, the liability of the insuring company would not be diminished by reason of the fact that the act pertained also to a more hazardous undertaking.

In *Holiday* v. *American Mutual Acc. Assn.,* 103 Iowa, 178, 64 Am. St. Rep. 170, 72 N. W. 448, and in *Zantow* v. *Old Line Acc. Ins. Co.,* 104 Neb. 655, 178 N. W. 507, recovery was permitted in each instance for the face of the policy, under circumstances not materially different from those involved in the present inquiry, and those two cases are the only ones disclosed by our research which would warrant recovery in this case for the larger amount. We are unable, however, to appreciate the reasoning in either case, or to approve the method by which the conclusion was reached.

In effect, the Iowa court read out of the policy the provision for diminished liability in the event the insured is injured while doing any act or thing pertaining to a more hazardous occupation, or failed to distinguish between a policy containing **[2]** such provision and one which omits it. It is our judgment that courts are not constituted to make new contracts for parties or to alter existing ones. Their function is to construe and enforce contracts as they are made, so long as they do not contravene public policy or violate express provisions of the law.

The Nebraska court construed the provision to apply only in the event the act or thing pertains *peculiarly* to a more hazardous occupation, thereby restricting materially its operation or effect.

It would appear reasonable that if the parties intended that the only act or thing, the doing of which would operate to diminish liability in case of injury, should be one pertaining peculiarly or exclusively to the more hazardous occupation, they would have employed some apt term to indicate such purpose, and the fact that they did not do so leads naturally to the conclusion that they intended just what the terms they did employ fairly signify. This policy makes the character of the occupation to which the act pertains, and not the character of the act itself, determine the extent of liability. It does not provide for a diminished liability only in the event the insured is injured while doing an extrahazardous act or thing pertaining to a different occupation, but does provide for diminished liability if, at the time of the injury, the insured is doing *any* act or thing pertaining to a more hazardous occupation. The adjective "any" means one indifferently out of an unlimited number (Webster's International Dictionary), and therefore, if the act or thing being done by the insured at the time of the injury pertains to a more hazardous occupation, it is wholly immaterial that such act itself, if standing alone, would be harmless, or fraught with no danger whatever. By

no possible process of reasoning can the language employed be tortured into any other meaning, and, since the parties so expressed themselves, they must abide the consequences. From [3] the time this shipment was started on its journey until it reached its destination, the livestock composing it were in transit, and Ebeling was a caretaker or tender in transit. (*Loesch* v. *Union Casualty & Surety Co.,* 176 Mo. 654, 75 S. W. 621.) It may be conceded that the isolated act of tending this particular shipment did not constitute a change of occupation within the meaning of the policy, but if it did not constitute an act or thing pertaining to the occupation of a tender in transit, it is only because the terms employed are utterly incomprehensible.

But the meaning of the contract is not obscure; on the contrary, it is too plain to admit of doubt. We are not alone in this conclusion. The decided weight of authority sustains our view. In each of the following cases: *Thomas* v. *Mason's Fraternal Acc. Assn.,* 64 App. Div. 22, 71 N. Y. Supp. 692, *Lane* v. *General Acc. Ins. Co.* (Tex. Civ. App.), 113 S. W. 324, and *Green* v. *National Casualty Co.,* 87 Wash. 237, 151 Pac. 509, the insured was injured while hunting, an occupation classified as more hazardous than the one for which he was accepted, and in each instance it was held that, though the insured had not changed his occupation, he was doing an act or thing pertaining to the more hazardous employment, and therefore the recovery should be limited to the amount which the premium would purchase upon the life of one engaged in such more hazardous undertaking. In *Montgomery* v. *Continental Casualty Co.,* 131 La. 475, 59 South. 907, the insured, a draftsman with office and traveling duties only, was injured while doing the work of a machinist, an occupation classified as more hazardous, and the decision was in harmony with the views expressed in the cases last cited above.

The order denying a new trial is affirmed. For the reasons given, the cause is remanded to the district court, with direc-

tions to modify the judgment by reducing the amount thereof to $275 as of the date of the original judgment, and, when so modified, it will stand affirmed.   The appellant will recover its costs of this appeal.

*Modified and affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES REYNOLDS, COOPER and GALEN concur.

