BERTHA A. McPECK, Respondent, v. TRAVELERS EQUITABLE INSURANCE COMPANY, a Corporation, Appellant.

(— A.L.R. —, 215 N. W. 217.)

**Insurance — change of occupation to one more hazardous.**

1. In an action on an insurance policy containing the following provision, viz.: "This policy . . . contains the entire contract of insurance, except as it may be modified by the company's classification of risks and premium rates in the event that the insured is injured . . . after having changed his occupation to one classified by the company as more hazardous than· that stated in the policy, except ordinary duties about his residence or while engaged in recreation, in which event the company will pay only such portion of the indemnities provided in the policy as the premium paid would have purchased at the rate within the limits so fixed by the company for such more hazardous occupation," the real question is, not so much as to whether or not the insured has abandoned the occupation stated in the policy, but whether or not at the time of injury he was engaged in another and more hazardous occupation.

**Insurance — accident policy — recovery of indemnity — occupation at time of injury.**

2. If at the time of the accident the insured was engaged in the occupation named in the policy, or any casual act that was incidental to the main occupation, he is entitled to recover the indemnity which his premium pays for in that occupation, but if at said time he is engaged in a more hazardous occupation or in any act incidental to such hazardous occupation, he is entitled only to the indemnity which his premium will purchase, in such more hazardous occupation.

**Insurance — indemnity recoverable — occupation.**

3. An insured who gives his occupation in an insurance policy as that of cook, and is killed while en route to a coal mine on a spur railroad track leading to the mine, and belonging to the mining company, where he is employed as a miner, and has been working for two months, such act of walking to the mine was incidental to the main employment in the mine, and the

insured can only recover the indemnity the premiums paid will purchase in such occupation.

Opinion filed August 23, 1927.

Accident Insurance, 1 C. J. § 81 p. 435 n. 44, 46; § 87 p. 438 n. 69; § 88 p. 438 n. 74, 75; p. 439 n. 76.

Appeal from the District Court of Morton County, *Berry,* J.

Modified and affirmed.

*W. H. Stutsman,* for appellant.

"The word 'occupation' must be held to have reference to the vocation, profession, trade or calling which the assured is engaged in, for hire or profit, and not as precluding him from the performance of acts and duties which are simply incidents connected with the daily life of men in all occupations, or from engaging in mere acts of exercise, diversion, or recreation." Accident Asso. v. Frohard, 134 Ill. 228, 25 N. E. 842.

"A change of occupation such as would avoid the policy must be a permanent change or a temporary change which in all substantial respects for the time being is a change of occupation." Pacific Mut. L. Ins. Co. v. Van Fleet, 47 Colo. 401, 107 Pac. 1097.

"Mere temporary services of an employee for his employer outside of the regular employment do not constitute a change of occupation." Redmond v. U. S. Health & Acci. Ins. Co. (Neb.) 148 N. W. 913.

"The term 'occupation' as employed in the policy implies simply that which at the time of the accident giving the cause of action constituted the assured's principal business or pursuit." Ætna L. Ins. Co. v. Dunn, 71 C. C. A. 79, 138 Fed. 629.

*Sullivan, Hanley & Sullivan,* for respondent.

"The policy automatically adjusts itself to the occupation of the insured, and gives him such indemnity as the premium paid by him will purchase in the occupation in which he is engaged." Bothell v. National Casualty Co. (Wis.) 109 Pac. 590.

"The test in these cases is not so much as to whether the assured had in fact abandoned the occupation stated in the application and policy, but whether or not at the time of his injury, he was in fact engaged in another occupation, not merely incidental, but as business,

or a more hazardous classification." Ætna L. Ins. Co. v. Dunn, 138 Fed. 629.

"Where insured, although engaged in an occupation as hazardous, is injured when not employed in the duties of such occupation, he is entitled to the benefit of the classification to which he belongs at the time of the injury." 1 C. J. 439.

BURKE, J. This is an action on an accident insurance policy and the material facts stipulated are as follows: On the 26th day of September, 1916, the Bankers Casualty Company of Minneapolis, Minnesota, issued an accident insurance policy to J. E. McPeck residing at North McGregor, Iowa, being designated in the policy as, first cook, in the employment of White & Bush Boarding Company.

On January 27, 1923, the Travelers Equitable Insurance Company was authorized to, and did assume all policies, and liabilities on all policies, of the said Bankers Casualty Company, including the liability upon the policy in this action. The consideration for said policy was a $4 policy fee, and a monthly premium of $2, and which policy insured the life of J. E. McPeck against death resulting directly and exclusive of all other causes, from bodily injuries during the life of said policy, through external, violent, and accidental means in the sum of $1,000, if death should occur within a year from the time of the issuance of the policy, and further provides, each consecutive year's renewal by the payment of the premium adds an additional 10 per cent of the amount of such indemnity of $1,000 up to 50 per cent of said amount. On the 26th day of January, 1923, the defendant reinsured all the policy liabilities of the Bankers Casualty Company of Minneapolis; that the said J. E. McPeck at the time he made application gave his occupation as that of first cook, employed by the White & Bush Boarding Company at North McGregor, Iowa. The policy was issued to him as a first cook, and he was classified as a professional cook in class "B" of the classification manual, then and now on file, and approved by the insurance department of the state of Iowa, that said policy contained the following provision:

"This policy includes the indorsements and attached papers, if any, and contains the entire contract of insurance, except as it may be modified by the Company's classification of risks and premium rates

in the event that the insured is injured or contracts sickness after having changed his occupation to one classified by the company as more hazardous than that stated in the policy, except ordinary duties about his residence or while engaged in recreation, in which event the company will pay only such portion of the indemnities provided in the policy as the premium paid would have purchased at the rate but within the limits so fixed by the company for such more hazardous occupation."

That more than a year prior to his death and without notifying the Bankers Casualty Company or the defendant, McPeck moved to Zap, North Dakota, and there became proprietor of a hotel for the accommodation of coal miners employed in that vicinity, and assumed the duties of cook in the hotel. He continued to make monthly payments to the Bankers Casualty Company, which company knew of the change of residence and accepted the premiums, but neither the defendant nor the Bankers Casualty Company knew that McPeck had in any manner changed his occupation. It is conceded that the business of proprietor of a hotel and cook therein is not an occupation classified by the company as more hazardous than that of first cook, as stated in the policy. On or about the 6th day of December, 1922, until the 6th day of February, 1923, and during said period each day excepting Sunday and occasional holidays and nights when the mine was not in operation McPeck's daily routine was as follows: At 4:30 in the morning he assisted in the preparation of breakfast, and upon the completion of breakfast, he retired and slept until about 10 o'clock in the forenoon, when he arose and assisted in the preparation of the noon meal for the patrons of the hotel, after which he retired and slept until about 5 o'clock in the afternoon when he arose and assisted in the preparation of the evening meal at the hotel, and then proceeded to the mine of the Lucky Strike Coal Company at Zap, where at 7 in the evening he took up his employment of shoveling slack coal underground, until about 4 in the morning, when he returned to the hotel, and assisted in the preparation of breakfast. His income for operation of said hotel was about $5 per day and for his labors at the mine $7.50 a night for full shift of eight hours. On February 6th, 1923, in the evening, and after completing his duties at the hotel, the said J. E. McPeck left the hotel, was proceeding on his way to the said coal mine, carrying

his dinner pail, and with the intent and purpose of shoveling slack coal in the mine underground and, while walking upon the spur track belonging to said mine, which connects said mine with the main line of the Northern Pacific Railway at Zap, which spur is about a quarter of a mile in length, and the said McPeck had proceeded only a short distance upon said spur track towards said mine, when an engine of the Northern Pacific Railway Company to which was attached a string of freight cars backed up and on the said spur track for the purpose of being loaded with coal, and ran down. and killed the said J. E. McPeck.

On the 10th day of March the defendant mailed a draft for $180 to the beneficiary, under said policy, the plaintiff herein, tendered to the beneficiary also, the sum of $1.60 unearned premium, which drafts were never presented for payment or returned to the defendant and the plaintiff refused to accept no sum less than the full amount claimed, viz.: $1,500 for which amount demand was duly made and was refused.

It is conceded that the occupation of an underground miner is more hazardous than that of a professional cook as stated in the policy. The occupation of said professional cook is classified in class "B" manual filed with the insurance department in the state of Iowa, and under this classification the payment of $2 per month premium entitled the beneficiary to collect the sum of $1,000 indemnity and the occupation of underground miner in class "X" of said manual; $1.75 per month premium entitled the beneficiary upon the accidental death of insured to collect the sum of $120 and no more.

The trial court made findings of fact and conclusions of law favorable to the plaintiff and from judgment thereon defendant appeals.

The defendant claims that McPeck was not working as a cook at the time of injury, but was working as a coal miner at said time, an occupation ten times more hazardous than that of cook, as classified and fixed, in the classification manual of the defendant company, filed in the office of the insurance department of the state of Iowa, and that that classification entitles the beneficiary to but $120, plus 50 per cent additional, and one dollar unearned premiums. Respondent claims, that the insured was not working as a coal miner at the time of the accident; that he was killed while walking on the "spur" railroad track going to the mine, and that it is the identical act engaged in at the

time of the injury that determines the liability.   The trial court found, and respondent admits, that the insured was employed in an additional employment distinct from that named in the policy, but since the assured was killed on the railroad the occupation of working in the mine had not commenced.   Respondent concedes in his brief that "if he (the insured) had arrived at the mine and had been shoveling coal in the mine, this court might well say that such act on his part for the period of a little less than sixty days might be acts that were contemplated in the reduced liability clause.   This leaves only the questions, had the more hazardous employment commenced, and was the walking on the railroad track an incident to the hazardous employment?"

As authority for the claim that the work in the coal mine had not commenced, respondent relies upon the case of Ætna L. Ins. Co. v. Frierson, 51 C. C. A. 424, 114 Fed. 56.   In that case, however, "the facts found by the court below were that two applications were made at the same time, one for a six months' policy, and the other for an annual policy.   The latter was desired only in case the policy would cover a trip such as he expected to make.   The soliciting agent agreed to accompany these applications with 'a letter fully explaining the facts as to the purposed trip.'   This the agent did.   Upon this accompanying part of the application the general agent acted.   Clearly this statement accompanying the application must be regarded, as both parties then intended, as a part of the application itself.   The letter and the formal application should be regarded as together constituting one document."   The company did attempt to cancel the policy but the attempt was never perfected.   "The agent did not communicate with the assured and withdrew the annual policy as directed.   Upon the contrary he 'in the due course of business' remitted the full premium for twelve months to the manager at Cincinnati who received it without objection, and remitted it to the chief officer at Hartford where it was received and retained.   'No further effort was made to cancel the policy.'   The proposal submitted by the assured to accept an annual policy, provided it would cover his contemplated journey, was accepted by the company's agent, and the act of this agent, when submitted to the company, was ratified by the receipt and retention of the premium with full knowledge of the facts.   .   .   .   The receipt and retention of the premium at the home office of the company, after determining

to recall the policy because unwilling to take the risk incident to the journey, and business contemplated by the assured, was a distinct election to ratify the contract, and continue the policy." Knickerbocker L. Ins. Co. v. Norton, 96 U. S. 234, 24 L. ed. 689; Globe Mut. L. Ins. Co. v. Wolff, 95 U. S. 326, 24 L. ed. 387; Madden v. Brown, 97 Mass. 148. "What we have said applies as well to the defense that the assured lost his life through adventures in the wilds, uninhabited or uncivilized regions. The assured lost his life by a storm while a passenger on board a steam vessel while crossing Kuskokwim bay on the coast of Alaska. He with others had been carried from Seattle as a passenger upon an ocean steamer to a point off Kuskokwim bay where they took the 'Jessie' for the purpose of continuing the journey to the gold fields of Alaska. The journey was not completed which the company knew he had in contemplation. It cannot be said that he was at the time of his death engaged in adventures in a wild, uncivilized region. He was crossing a well-known arm of the sea and had not reached the river which it was purposed to ascend. His adventure in a wild and uncivilized region had not begun. The policy also provided that if the insured is injured in any occupation or exposure classed by this company higher than the premium paid for this policy covers, the sum insured and weekly indemnity will be only such amounts as said premium will purchase at the rate fixed for such increased hazard. The contention is that the insured had changed his occupation from that of a lawyer, as stated in the application, to that of a prospector miner. But there are no facts upon which to base this defense, if the assured had lived to begin his work of prospecting for mines there might be some room for the contention now made. That he intended to engage in prospect mining is not enough to bring this provision of the policy into effect, the company must show that he was actually engaged in an occupation, at the time he sustained his injury, classed higher than the premium paid, for the policy. This the company has not done, for it is clear that he lost his life in a storm while a passenger on a steamer crossing the Kuskokwim bay. The journey which he contemplated when he applied for insurance and about which he informed the company had not been completed when he met death." It is clear that this decision is based upon the contract of insurance. The company issued a policy which covered the trip contemplated by the as-

sured, and he lost his life before the journey was completed and, of course, the company was liable upon the policy.

McPeck had been working in the mine for two months at the time he was killed, and it cannot be said that his employment as a miner had not commenced at the time of the accident. Unlike the case of Ætna L. Ins. Co. v. Frierson, supra, the defendant company in the instant case did not know that the insured was employed as a miner, and it was not necessary for the insured to inform the company of such employment. Under the policy the insured could engage in, or change his occupation to one classified by the company as more hazardous than that stated in the policy, but in such case the company would pay only such portion of the indemnities provided in the policy as the premium paid would purchase at the rate fixed by the company for such hazardous occupation. As stated in the case of Bothell v. National Casualty Co. 59 Wash. 209, 109 Pac. 590, the policy automatically adjusts itself to the occupation of the insured, and gives him such indemnity as the premium paid by him will purchase in the occupation in which he is engaged when injured.

The respondent relies on the case of Zantow v. Old Line Acci. Ins. Co. 104 Neb. 655, 178 N. W. 507; in this case the court said: "The provision in the policy, provided for reduced benefits in case the insured should change his occupation to a more hazardous one does not apply. . . . It cannot be said that the insured, a farmer, who, as incidental to his occupation, raised live stock for market, and would at some time therefore ship it to market, had within the meaning of the clause just mentioned, changed his occupation from farmer to stock shipper by the one act of accompanying this stock in shipment, even though he had previously sold it to another." The foregoing statement is unquestionably the law supported by the great weight of authority. 1 C. J. 438, § 82, states the rule as follows: "If the injury to, or death of insured occurs while he is engaged in a more hazardous occupation than that under which he is classified, then no recovery can be had, or if a recovery can be had, it can be only for the amount provided for injuries, or death incurred while engaged in such hazardous occupation. In such case the real question is not so much as to whether or not the insured has abandoned the occupation stated in the policy, but

whether or not at the time of the injury he was engaged in another more hazardous occupation."

In the case of Gotfredson v. German Commercial Acci. Co. L.R.A. 1915D, 312, 134 C. C. A. 311, 218 Fed. 582, the insured's statement in the policy was, that he was in the trucking business; occupation and duties are as follows: "Proprietor, no manual labor." While moving from one location to another, and during the absence of the man who operated the elevator, the insured undertook to operate it and was injured in an accident from which he died. In interpreting the meaning of the words "occupation, proprietor, no manual labor," the courts said:

"Considering their apparent intent, it would seem that their natural and necessary meaning would include mere casual acts, even though the acts involve temporary manual labor. It must be kept in mind that these words were used to describe the occupation, the regular business of applicant. Occupation is a very comprehensive term, it compasses incidental, as well as the main requirements, of one's vocation, calling, and business." Everson v. General Acci. Fire & Life Assur. Corp. 202 Mass. 169, 175, 88 N. E. 658; Union Mut. Acci. Asso. v. Frohard, 134 Ill. 228, 234, 10 L.R.A. 383, 23 Am. St. Rep. 664, 25 N. E. 642. It is clear from these decisions that the term "employment" includes not only the main requirements of the occupation, but also everything that is an incident or connected with it.

The marketing of stock raised by the farmer is just as much an incident of farming as the marketing of grain, and the casual marketing of grain or live stock by the farmer is a necessary incident of farming, and so too, the use of an elevator by the trucking company was incidental to that business.

In the case of Thorne v. Casualty Co. of America, 106 Me. 274, 76 Atl. 1106, the court said: "In construing a similar provision in a policy, that the provision does not contemplate the inhibition of acts [the] performance of which is necessarily implied from the vocation named in the policy, but applies to a regular occupation engaged in by insured in a class other than that named in the policy." To the same effect Smith v. Massachusetts Bonding & Ins. Co. 179 N. C. 489, 102 S. E. 887; Ebeling v. Bankers' Casualty Co. 61 Mont. 58, 22 A.L.R. 777, 201 Pac. 284; in the last case, the case of Zantow v. Old

Line Acci. Ins. Co. and the case of Thorne v. Ætna L. Ins. Co. 155. Minn. 271, 193 N. W. 463, the policies construed include a provision not included in the policy in the case at bar. Although the Thorne Case was decided against the insurance company, because the company had not complied with the law of the state in reference to the printing of the provision in bold face type and with greater prominence than any other portion of the text of the policy, respondent insists that some of the reasoning in the opinion applies to this case.

In the Thorne Case, the insured at the time he made application was an attendant in an insane asylum, and also, a newspaper reporter. He gave his occupation as that of a newspaper reporter. He followed the occupation of an attendant in the asylum at night and that of a newspaper reporter during the day. The court said: "In walking home the insured was exposed only to such risks as were common to all persons going about the roads and streets of Hastings. Such risks do not grow out of his employment at the asylum and hence it is extremely doubtful whether the situation is the same as though the injuries he sustained had been inflicted upon him by a patient in the asylum." We are not impressed with this argument.

In the case of Ætna L. Ins. Co. v. Dunn, 71 C. C. A. 79, 138 Fed. 629, the insured gave his occupation as a druggist. His drug store burned down, and his time was thereafter occupied in settling the business, collecting accounts, and fire insurance. He filed on a homestead in Oklahoma and only looked after the affairs of the farm. He did not work himself. He had no machinery, no horses that were broken, had to hire all the work done, and as soon as he could prove up and sell the homestead, he intended to resume the drug business. His wife testified that on the day of the accident she and her husband "drove to a farm house to see about renting some machinery for putting in the wheat. Then we drove to Lone Wolf to get our mail and then home. At the house I got out of the buggy, and Mr. Dunn was going to drive to a farmhouse where a gentleman lived whom Mr. Dunn often hired to assist in the work." On this trip he was thrown from the buggy and killed. Like the case of Thorne v. Ætna L. Ins. Co. supra, the insured in driving on the roads was exposed only to such risks as were common to all persons going about on the roads, but the court held that the insured was engaged in the more hazardous occupation of farming,

and could only recover the reduced indemnity. In that case the insured was injured while going to get someone to work on the farm.

In the instant case the insured did not start out to get some one to work in the mine, he went to the mine to work in it himself, and can it be said that if an accident happens when he is on the road to get someone to work, that the principle is any different if the accident happens when he is on the road to do the work himself? In the case at bar, the insured in walking upon the spur track leading to the mine was exposed to greater risk than the insured in the Thorne Case, who was injured while walking on the roads or streets in the city of Hastings. Roads and streets are built and kept in repair, so as to be safe for public travel, but a spur leading to a coal mine is a private road, not intended for public use, and is exceedingly dangerous to walk on, in the dark (it is common knowledge that between the 6th of December and the 6th of February it would be dark in that latitude at 7 o'clock in the evening) when the mine is operating night and day, getting out and shipping coal to supply the demand for coal in the winter months, but that is not the test.

It seems to be the settled law, that the right to recover on such a policy depends upon whether the accident or injury happened while the insured was engaged in the occupation in which he was insured, or some casual employment that was incidental to the main occupation.

In the case at bar, the insured was injured while on the spur track of the Lucky Strike Coal Mine Company, while he was en route to the coal mine where he was employed in shoveling coal, and had been so employed for two months. Certainly he was not employed as a cook at the time, nor was his walking on the spur track of the coal mine company incidental, or connected in any way with that of the occupation of a cook, and it seems clear, that it was a necessary incident of the occupation of working in the coal mine. It was a part of the nightly routine under the stipulation, for the insured to walk over that spur track every night to the mine. Suppose that the insured had two policies, one for the occupation of cook, and one for the occupation of a coal miner, and he was killed, while walking to work, in the mine. Under which policy could there be a recovery? It seems clear that the recovery would have to be under the policy which insured his employment in the mine. The fact is that he was insured in his employ-

ment in the mine just as certainly as if he had taken out an additional policy. The policy under which recovery is sought covers every kind of employment that is mentioned in the insurance company's manual, and it automatically adjusts itself to the occupation of the insured, and gives him such indemnity as the premium paid by him will purchase in the occupation in which he is engaged when injured. We are of the opinion that the insured was injured while engaged in a more hazardous employment, than that of cook, and he is entitled to recover only such amount as his premium would pay for in the more hazardous occupation, which is conceded to be $180. As thus modified the judgment is affirmed.

BIRDZELL, Ch. J., and BURR, CHRISTIANSON, and NUESSLE, JJ., concur.