MARY W. RAMÍREZ ET AL., Plaintiffs and Appellees, *v.* CARIB-
BEAN CASUALTY COMPANY, Defendant and Appellant.

No. 4627.   Argued May 7, 1929.—Decided February 28, 1930.

*Jaime Sifre Jr., Diego O. Marrero* and *H. Franceschi,* for the appel-
lant.   *J. Alemañy,* for the appellees.

MR. JUSTICE WOLF delivered the opinion of the court.

By a judgment of the District Court of Mayagüez, the
Caribbean Casualty Co. was required to pay to Mary W. Ra-
mírez and Dr. T. Ramírez Cuerda (her husband), the sum of
$5,300.   The plaintiffs brought suit on an automobile insur-
ance policy.   Dr. T. Ramírez and his wife were previously
sued by Esteban Flores for injuries caused him while an au-
tomobile was driven by the said Dr. Ramírez.   Judgment was

rendered for Flores. The Caribbean Casualty Co. denied liability, inasmuch as at the time of the accident, so the answer in effect set up, the automobile was being used, as expressly excluded from the terms of the policy, on a professional visit. For convenience of treatment we shall refer to the suit against the two Ramírez as the "previous" or "former" suit or the "first" suit, while we shall refer to the one brought against the insurance company as the "present" suit or the "second" suit.

Dr. Ramírez took the stand in the first suit and stated under oath that he was going on a professional visit when the accident occurred and that he used the automobile exclusively for professional visits. The company maintained in the present suit that the statement of Dr. Ramírez made in the previous suit was binding on him as a judicial admission.

The district court in its opinion after tracing the history of the policy and the accident for which the present plaintiffs were made responsible, found by a preponderance of the evidence, that the insurance company was liable under the policy and that there had been no violation of any clause thereof.

The plaintiffs had alleged an estoppel or waiver against the insurance company, inasmuch as it or its attorneys had undertaken to defend the previous action and had actually appeared in said action, filed the answer and partially entered into the trial of the case. The District Court of Mayagüez, as it found on a direct liability on the part of the company, did not enter into a consideration of the estoppel of waiver alleged.

In passing we may say that one of the company's best chances was to maintain that the conduct of Dr. Ramírez in the former case by which the company was induced to abandon the defense, estopped him from recovering, inasmuch as if the company had gone on with its defense it might have prevented a recovery. Not only was this supposed defense not raised by the answer or at the trial, but it is evident that the retirement of the company from the former case was

entirely voluntarily. Nor does the appellant convince us that any other result would have followed in the previous action. We have mentioned this for its possible relation to the averment on the part of the company that Dr. Ramírez' statements in the former trial were judicial admissions.

While not at all lending our approval to the conduct of Dr. Ramírez, we agree with the appellees that his statements in the former suit did not constitute a judicial admission in a strict sense. Whether Dr. Ramírez at the time of the accident was driving his automobile for pleasure or on a professional visit, had no materiality or relevancy in the former suit. In either event the liability of Dr. Ramírez was not increased or diminished. For any judicial purpose the insurance company was not a party to the previous suit. Its attorneys promptly retired from the defense thereof when there was an apparent assertion on the part of Dr. Ramírez that would relieve the company of liability. It was partly in this connection that we discussed the possibility of an estoppel by conduct. Admissions become judicial in the strict sense when they affect a party to a suit. They may be considered extrajudicial even if made in the course of a trial if they affect nobody in the suit. *Parsons* v. *Copeland,* 33 Me. 370, 54 A. D. 628; *Renville State Bank* v. *Kenville* 166 N. W. 643; note to *First National Bank* v. *Duncan,* 28 L.R.A. (N.S.) 327; *Rich* v. *City of Minneapolis,* 41 N. W. 455; *Riddle* v. *Riddle,* 97 S. E. 382; 22 C. J. 330, note 59; 1 R.C.L. 462, *et seq., passim.* The very citations of appellant lend support to this. The insurance company was in no sense a privy to Flores. As between the Ramírezes and Flores or anybody in privity with him, Dr. Ramírez was bound by his admission. Otherwise he could always explain his statements and show what the actual truth was. This he did to the satisfaction of the District Court of Mayagüez. Neither did it matter that in the former suit the court found that the doctor was on a professional visit.

The appellant criticizes the District Court of Mayagüez for not making more specific findings. The appellant did not ask for them because in all probability it knew the position of the court. The record shows that when Dr. Ramírez attempted to explain his statements at the previous trial, the defendant in the present suit objected. The court properly permitted the explanation. It was entirely obvious to the defendant that the case was turning upon the question of whether Dr. Ramírez and his witnesses were to be believed.

Dr. Ramírez said in the course of his explanation that after the notice to the company of the accident, it came to his ears that he was suspected of being intoxicated at the time he went to the party at Maricao; that he consulted at different times with one of the attorneys of the company and with a Mr. Porrata, an agent of the company, whether it would do any harm if he stated in the Flores case that he was on a professional visit as distinguished from the use of the automobile for pleasure purposes; that he feared it would hurt his reputation if it was said that he was intoxicated; that he was told by the attorney and Mr. Porrata that it did not matter; that then he made his statement that he was on a professional visit and used the automobile on professional visits exclusively. The attorney for the company denied making any statement, but Mr. Porrata did not take the stand. Appellant is mistaken when it says that it did not appear that Porrata was an agent of the company. A sufficient agency to have induced this belief in Dr. Ramírez was shown in the testimony of Alberto Roig, the soliciting agent (T. p. 53). Dr. Ramírez said, and he was corroborated by several witnesses, that his main object in going to Maricao was to attend a small party given by his friend Rafael Mangual and that incidentally he was asked to prescribe for a son of the friend and did so. The court had a right to weigh the explanation and believe it.

We do not follow the appellant in its attempt to destroy the ultimate truth of Dr. Ramírez and his witnesses in the

present case. Of course, Dr. Ramírez had made himself a subject for suspicion, but the court was entitled to believe him and evidently did. All the evidence pointed clearly to a party at the house of Mangual.

The appellees devote a good deal of attention to the matter of estoppel. They say that when the company made the investigation and undertook the defense, it was estopped to deny a liability; that the company was bound to ascertain the truth. The citations of appellees cover cases where the company had an opportunity to know the truth. In the present case Dr. Ramírez told the agents of the company that he was using the automobile for pleasure and the apparently contrary fact appeared only at the Flores trial. No estoppel arose by failure to investigate.

We have made reference to Porrata as agent of the company. The statement made to him by Dr. Ramírez of the course the latter proposed to follow in the Flores case and the acquiescence of Porrata could not bind the company. While the indications of the record are that Porrata was an agent for the investigation of the facts, he was not shown to be a sufficient agent to estop the company in this regard. A different question was presented when we considered the truth of Dr. Ramírez' explanation.

The principal doubt we have had on the matter of estoppel arises from the entry of the attorneys into the former case. They had a double duty—one to the Ramírezes and one to the company. The latter was perhaps the primary one. While we think the better course of the attorneys would have been to disclaim liability and go on with the case, nevertheless, under the statements made by Dr. Ramírez they were justified in retiring if they, in their turn, worked no real harm to the assured and appellees show no direct harm by having to defend the former action themselves. Perhaps the matter of estoppel and the truth of Dr. Ramírez' ultimate statements are intertwined. An estoppel could apparently only arise in

any event under the facts of this case if Dr. Ramírez was not primarily on a professional visit when the accident occurred.

While, of course, under the policy, if it applied, the assured was bound to let the company defend the first action, yet the obligation to defend arises only when there is such a liability. The company to be estopped ought to have been able to see that by defending they might waive any doubtful clause of the policy. The statements of Dr. Ramírez on the stand apparently left nothing in doubt and gave the company no election. The case would have been different if in possession of all the supposed facts after defending the suit in part the company had denied liability and then retired from the defense. *Fullerton* v. *United States Casualty Co.*, 6 A.L.R. 367.

There are other interesting questions suggested by this appeal. There is a line of cases which hold that if a general practice exists like an occupation, a deviation to another occupation, more hazardous, does not ordinarily change the liability. *Pacific Mutual Life Insurance Co.* v. *Van Fleet* (Colo.), 107 Pac. 1087, 1092; *Ebeling* v. *Bankers Casualty Co.*, 61 Mont. 58; 22 A.L.R. 777, 779. In other words, if the Ramírezes were using the automobile mainly for pleasure, perhaps a fortuitous professional visit would not relieve the company from liability.

On the other hand, we are not too sure that on other occasions the automobile might not have been used for professional visits. We think on the whole the court did well to test the case by deciding whether or not Dr. Ramírez was on a professional visit on the day of the accident.

The appellant also maintains that the plaintiffs had no right to recover unless they first showed that they had suffered a loss by paying the judgment in the Flores case. They maintain that this policy is one for indemnity and not an ordinary liability policy. The clauses of the policy to be considered are as follows:

"Clause I. To pay any loss on account of the liability imposed by the law on the insured as damages by reason of bodily injuries, etc.

"Clause II. To pay any loss on account of the liability imposed by the law on the insured or damages by reason of damage to, or destruction of property, etc.

"Clause III. To compensate the insured for any loss incurred on account of damage to, or destruction of, any of the automobiles enumerated, etc."

Necessarily, it is the subject of argument that a plaintiff suffers no actual financial loss until he pays his money out of his pocket to satisfy a judgment, but we discover no intention on the part of the company to make such a payment a condition precedent to recovery. Insurance policies must be construed most strictly against the company that writes them and no construction should be put upon the clauses that would seriously impede a recovery or lead to absurd conclusions. A number of the cases in the United States that we have examined, place such a duty on the part of the assured when the policy contains a direct stipulation to that effect. The word "loss" as used in these clauses must be construed in Porto Rico to mean an increase of obligation on the part of the assured. If a man's total assets are diminished by an accident, especially supposing him to be responsible, he has necessarily suffered a loss. Besides this we think the words "a responsibility fixed by the law" as used in the said clauses mean the existence of a judgment and not its payment.

In accordance with some of the jurisprudence cited by the appellees, we also have some doubt whether in any case the right to require the performance of this condition of payment arises when the insurance company had an opportunity to defend and did not. Of course, in this case, as we have seen, there may have been some justification for the retirement of the defendant from the former suit, but such retirement was done with a certain amount of risk on the part of the company, if, as it turned out, a judgment arose against the assured and they were forced to defend the suit themselves.

It is well to add for the general purposes of this opinion that under the policy the company reserved the right to defend any suits against the assured.

The judgment must be affirmed.