MARY W. RAMÍREZ y su esposo DR. T. RAMÍREZ CUERDA, demandantes y apelados, *v.* CARIBBEAN CASUALTY COMPANY, demandada y apelante.

No. 4627.—*Sometido:* Mayo 7, 1929. *Resuelto:* Febrero 28, 1930.

*Jaime Sifre Jr., Diego O. Marrero* y *H. Franceschi,* abogados de la apelante; *J. Alemañy,* abogado de los apelados.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

██ A virtud de una sentencia de la Corte de Distrito de Mayagüez la Caribbean Casualty Co. fué requerida para que pagara a Mary W. Ramírez y al Dr. T. Ramírez Cuerda (su esposo) la suma de $5,300. Los demandantes instituyeron una acción sobre una póliza de seguro por accidente de automóvil. El Dr. T. Ramírez Cuerda y su esposa fueron anteriormente demandados por Esteban Flores por los daños causádosle mientras dicho Dr. Ramírez guiaba un automóvil. Se dictó sentencia a favor de Flores. La Caribbean Casualty Co. rehusó asumir responsabilidad alguna, toda vez que al tiempo del accidente, así se alegaba, en efecto, en la contestación, el automóvil era usado, según lo excluían expresamente los términos de dicha póliza, para una visita profesional. Para conveniencia de la consideración de este caso nos referiremos al caso instado contra los dos Ramírez como el "pleito anterior" o como el "primer pleito," mientras que haremos

referencia al caso instituído contra la compañía de seguros como el "presente" o "segundo caso."

El Dr. Ramírez ocupó la silla testifical en el primer pleito y declaró bajo juramento que iba a una visita profesional cuando ocurrió el accidente y que usaba el automóvil exclusivamente para visitas profesionales. La compañía sostuvo en el presente caso que la declaración del Dr. Ramírez prestada en el pleito anterior era obligatoria para él como una admisión judicial.

La corte de distrito en su opinión, después de hacer una reseña de la historia de la póliza de seguro y del accidente a consecuencia del cual se hizo responsables a los aquí demandantes, halló por preponderancia de la prueba que la compañía de seguros era responsable de acuerdo con la póliza y que no había habido infracción alguna de ninguna cláusula de la misma.

Los demandantes habían alegado un impedimento o renuncia contra la compañía de seguros, ya que ella o sus abogados se habían encargado de la defensa del pleito anterior y realmente habían comparecido en dicho caso, radicado la contestación e intervenido parcialmente en la vista del caso. Como la Corte de Distrito de Mayagüez resolvió que había responsabilidad directa por parte de la compañía, no entró a considerar el alegado impedimento o renuncia.

De paso podríamos decir que una de las oportunidades mejores que tuvo la compañía fué sostener que la conducta del Dr. Ramírez en el caso anterior a virtud de la cual la compañía fué inducida a abandonar la defensa del mismo le impedía a él obtener indemnización, toda vez que si la compañía hubiese continuado con su defensa ella tal vez habría evitado que el demandante obtuviera sentencia en el caso anterior. No sólo esta supuesta defensa no fué levantada por la contestación o durante la vista, sino que es evidente que el haberse retirado la compañía del primer pleito fué un acto enteramente voluntario. Tampoco nos convence la ape-

lante de que hubiera habido cualquier otro resultado en el pleito anterior. Hemos hecho mención de esto por la posible relación que pueda tener con la alegación hecha por la compañía de que las manifestaciones del Dr. Ramírez en el pleito anterior eran admisiones judiciales.

Si bien no impartimos en manera alguna aprobación a la conducta del Dr. Ramírez, convenimos con los apelados en que sus declaraciones en el pleito anterior no constituían una admisión judicial en su sentido estricto. Si el Dr. Ramírez en el momento del accidente guiaba su automóvil por placer o en una visita profesional, no tenía pertinencia (*materiality*) o importancia (*relevancy*) algunas en el pleito anterior. En uno u otro caso la responsabilidad del Dr. Ramírez no se aumentaba o disminuía. Para ningún fin judicial era la compañía de seguros una parte en el pleito anterior. Sus abogados se retiraron prontamente de la defensa del mismo cuando se hizo la aserción aparente por parte del Dr. Ramírez que podría relevar a la compañía de responsabilidad. Fué parcialmente a este respecto que discutimos la posibilidad de un impedimento por conducta. Las admisiones se convierten en judiciales en su sentido estricto cuando afectan a una parte en un litigio. Pueden ser consideradas como extrajudiciales aun si son hechas en el curso de un juicio, si no afectan a ninguna parte en el litigio. *Parsons* v. *Copeland*, 33 Me. 370, 54 A. D. 628; *Renville State Bank* v. *Kenville*, 166 N. W. 643 nota al caso de *First National Bank* v. *Duncan*, 28 L.R.A. (N. S.) 327; *Rich* v. *City of Minneapolis*, 41 N. W. 455; *Riddle* v. *Riddle*, 97 S. E. 382; 22 C. J. 330, nota 59; 1 R.C.L. 462 *et seq.*, *passim*. Las mismas citas hechas por la apelante prestan apoyo a esto. No existe en forma alguna nexo jurídico entre la compañía de seguros y Flores. En lo que concernía a los Ramírez y a Flores o a cualquier persona que tuviera nexo jurídico con este último, el Dr. Ramírez estaba obligado por su admisión. De lo contrario él podía siempre explicar sus manifestaciones y demostrar cuál era realmente la verdad. El hizo esto a

satisfacción de la Corte de Distrito de Mayagüez. Tampoco importaba que en el pleito anterior la corte resolviera que el doctor iba a hacer una visita profesional.

La apelante critica a la Corte de Distrito de Mayagüez por no haber hecho conclusiones más específicas. La apelante no las pidió porque con toda probabilidad conocía la posición de la corte. Los autos demuestran que cuando el Dr. Ramírez trató de explicar las manifestaciones hechas por él en el juicio anterior, la demandada en el presente caso se opuso. La corte debidamente permitió la explicación. A la demandada le era enteramente claro que el caso giraba alrededor de la cuestión de si el Dr. Ramírez y sus testigos merecían crédito.

El Dr. Ramírez dijo en el curso de su explicación que después de dar parte a la compañía del accidente llegó a sus oídos que se sospechaba que él estaba embriagado en el momento que iba a la fiesta en Maricao; que en momentos distintos consultó con uno de los letrados de la compañía y con un tal Sr. Porrata, agente de la compañía, respecto a si perjudicaría en algo el que él manifestara en el caso de Flores que iba a hacer una visita profesional, para distinguirla del uso del automóvil para fines de placer; que él temía que su reputación fuese lesionada si se decía que estaba embriagado; que el abogado y el Sr. Porrata le manifestaron que eso no importaba; que entonces él prestó su declaración de que se dirigía a una visita profesional y utilizaba el automóvil para visitas profesionales exclusivamente. El abogado de la compañía negó haber hecho manifestación alguna pero el Sr. Porrata no declaró. La apelante está equivocada al decir que no aparecía que Porrata fuera un agente de la compañía. Por la declaración de Alberto Roig, agente de seguros, se demostró que existía una agencia suficiente para haber inducido al Dr. Ramírez a tener esta creencia (transcripción, pág. 53). El Dr. Ramírez manifestó, y en ello fué corroborado por varios testigos, que su objeto principal al

ir a Maricao fué asistir a una fiestecita dada por su amigo Rafael Mangual, y que incidentalmente se le pidió que recetara a un hijo de su amigo, y que así lo hizo. La corte tenía derecho a apreciar la explicación y a creerla.

No seguimos a la apelante en su tentativa de destruir la verdad última del Dr. Ramírez y sus testigos en el presente caso. Desde luego, el Dr. Ramírez se hizo objeto de sospechas, pero la corte tenía derecho a creerlo, y evidentemente lo creyó. Toda la prueba claramente indicaba que hubo una fiesta en la casa de Mangual.

[4, 5] Los apelados dedican gran atención a la cuestión de *estoppel*. Dicen que cuando la compañía practicó la investigación y se hizo cargo de la defensa, quedó impedida de evadir responsabilidad; que la compañía estaba obligada a cerciorarse de la verdad. Las citas de los apelados comprenden casos en que la compañía tuvo la oportunidad de conocer la verdad. En el presente caso el Dr. Ramírez dijo a los agentes de la compañía que estaba utilizando el automóvil para paseo, y el hecho aparentemente contrario sólo apareció durante el juicio del caso de Flores. No surgió *estoppel* alguno por haberse dejado de investigar.

Nos hemos referido a Porrata como agente de la compañía. La manifestación héchale por el Dr. Ramírez respecto al curso que este último se proponía seguir en el caso de Flores y el allanamiento de Porrata no podían obligar a la compañía. Si bien los autos indican que Porrata era un agente para investigar los hechos, no se demostró que tuviera suficientes poderes como agente para hacer que la compañía estuviese impedida a este respecto. Una situación diferente fué presentada cuando consideramos la verdad de la explicación dada por el Dr. Ramírez.

La duda principal que hemos tenido en cuanto a la cuestión de impedimento (*estoppel*) surge de la intervención de los abogados en el caso anterior. Ellos tenían un deber doble, uno para con los Ramírez y otro para con la compañía.

El deber para con la última era tal vez el principal. Aunque creemos que el mejor camino a seguir por los abogados hubiera sido el de alegar que no había responsabilidad y el de continuar con el caso, sin embargo, de acuerdo con las manifestaciones del Dr. Ramírez ellos estaban justificados al retirarse si ellos a su vez no ocasionaban un verdadero perjuicio a los asegurados, y los apelados no han demostrado haber sufrido daño alguno directo por haber tenido que defenderse a sí mismos en el pleito anterior. Quizá la cuestión de impedimento y la veracidad de las últimas manifestaciones del Dr. Ramírez están entrelazadas. De todos modos, sólo podía surgir aparentemente un *estoppel,* bajo los hechos de este caso, si el Dr. Ramírez no iba principalmente a una visita profesional cuando el accidente ocurrió.

Desde luego, si bien de acuerdo con la póliza, caso de ser aplicable, el asegurado estaba en la obligación de permitir que la compañía defendiera el primer pleito, sin embargo, la obligación de defender surge solamente cuando hay tal responsabilidad. Para que la compañía estuviera impedida debió estar en posición de ver que al defender el litigio ella podía renunciar a cualquier cláusula dudosa de la póliza. Las manifestaciones del Dr. Ramírez en la silla testifical aparentemente no dejaron nada en duda y no dieron a la compañía ningún derecho de elección. El caso hubiese sido distinto si estando en posesión de todos los supuestos hechos, después de defender el caso parcialmente, la compañía hubiese rehusado asumir responsabilidad y entonces se hubiera retirado de la defensa. *Fullerton* v. *U. S. Casualty Co.,* 6 A.L.R. 367.

Esta apelación sugiere otras cuestiones interesantes. Hay una línea de casos que sostienen que si existe una práctica general, como una ocupación, el desviarse a otra ocupación más peligrosa, generalmente no altera la responsabilidad. *Pacific Mutual Life Ins. Co.* v. *Van Fleet* (Colo.) 107 Pac. 1087, 1092; *Ebeling* v. *Bankers Casualty Co.,* 61 Mont. 58, 22 A.L.R. 777, 779. En otras palabras, si los Ramírez utili-

zaban el automóvil principalmente en viaje de placer, tal vez una visita profesional fortuita no relevaría de responsabilidad a la compañía.

Por otra parte, no estamos muy seguros de que en otras ocasiones el automóvil no pudiera haberse utilizado para visitas profesionales. En términos generales creemos que la corte hizo bien al poner el caso a prueba decidiendo si el Dr. Ramírez iba o no a una visita profesional el día del accidente.

La apelante también sostiene que los demandantes no tenían derecho a resarcirse de los daños y perjuicios a menos que demostraran primero que habían sufrido una pérdida, pagando la sentencia en el caso de Flores. Sostiene además que ésta es una póliza de indemnización, y no una póliza de seguro corriente. Las cláusulas de la póliza a considerar son las siguientes:

"Cláusula 1.—Pagar cualquier pérdida por concepto de la responsabilidad impuesta por la Ley al asegurado por daños y perjuicios con motivo de lesiones corporales, etc.

"Cláusula 2.—Pagar cualquier pérdida por concepto de la responsabilidad impuesta por la Ley al asegurado por daños y perjuicios con motivo de averías o destrucción de propiedad, etc.

"Cláusula 3.—Indemnizar al asegurado por pérdidas resultantes de la avería o destrucción de cualquiera de los automóviles enumerados," etc.

Necesariamente, está sujeto a argumentación el hecho de que un demandante no sufre pérdida pecuniaria efectiva hasta tanto saque el dinero de su bolsillo para satisfacer una sentencia, pero no descubrimos intención alguna por parte de la compañía de hacer que tal pago sea una condición previa al resarcimiento. Las pólizas de seguro deben ser interpretadas estrictamente contra la compañía que las redactó, y no debe darse a sus cláusulas una interpretación que impida seriamente el resarcimiento o que conduzca a conclusiones absurdas. Un número de casos de los Estados Unidos que hemos examinado impone tal deber al asegurado cuando la póliza contiene una estipulación directa a ese efecto. La

palabra "pérdida," según se usa en estas cláusulas, debe ser interpretada en Puerto Rico como que significa un aumento en las obligaciones de parte del asegurado. Si el activo total de una persona es disminuido por un accidente, especialmente suponiendo que ella sea responsable, necesariamente tal persona ha sufrido una pérdida. Además de esto creemos que las palabras "una responsabilidad fijada por la ley," según se usan en dichas cláusulas, significan la existencia de una sentencia y no su pago.

De acuerdo con alguna de la jurisprudencia citada por los apelados, también tenemos algunas dudas respecto a si en algún caso el derecho a exigir el cumplimiento de esta condición de pago surge cuando la compañía de seguros ha tenido la oportunidad de defender el caso y no lo ha hecho. Desde luego, en el presente caso, conforme hemos visto, puede que haya habido alguna justificación para que la demandada se retirara del pleito anterior, pero tal proceder de parte de la compañía fué adoptado asumiendo cierto riesgo si, según resultó, se dictaba sentencia contra los asegurados y éstos se veían obligados a defender el pleito por sí mismos.

Es bueno agregar para los fines generales de esta opinión que de acuerdo con la póliza la compañía se reservó el derecho de defender cualesquier litigios que se entablaren contra los asegurados.

*La sentencia apelada debe ser confirmada.*